The UNITED STATES of America ex rel. Thomas GALLAGHER, Petitioner,

v.

Loren E. DAGGETT, Warden of Sandstone Correctional Institution, and Delbert Hacker, Acting Warden of Sandstone Correctional Institution, Respondents.

No. 4–70 Civ. 531.

United States District Court,
D. Minnesota,
Fourth Division.

March 5, 1971.

Lester L. Sokol, Minneapolis, Minn., for petitioner.

Robert G. Renner, U. S. Atty., by Joseph T. Walbran, Asst. U. S. Atty., for respondents.

NEVILLE, District Judge.

Petitioner is a prisoner at the Federal Correctional Institution at Sandstone, Minnesota, serving a five-year sentence imposed on or about October 7, 1969 by the Honorable Julius J. Hoffman of the Northern District of Illinois for interstate fraud by wire in violation of 18 U.S.C. § 1343. In normal course petitioner will be considered for parole sometime in April or May of 1971 and be eligible for release on parole on May 14, 1971 or thereafter should the Parole Board act favorably on his case. On or about November 25, 1970, the officials at the Sandstone Institution recommended petitioner's transfer to the Federal Penitentiary at Terre Haute, Indiana, since "he is too sophisticated for the population at this institution and should be removed." Before his removal and transfer and on December 2, 1970, petitioner's attorney filed with this court a request for a temporary restraining order against such removal and transfer, alleging that petitioner's civil rights had been and are being violated. On presentation of the petition, the court, under Rule 65 of the Federal Rules of Civil Procedure, directed that petitioner's attorney notify and serve the United States Attorney, who thereupon agreed that petitioner would not be removed or transferred until a hearing could be held before this court. Thus no temporary restraining order was entered and a subsequent hearing was held at which the chief correctional officer of the Institution at Sandstone, Minnesota, as well as the petitioner testified.

The essence of petitioner's grievance is that over the last year or more five different alleged infractions or violations of the institution's rules and regulations have appeared on his record and in his prisoner's file. He asserts that he is not guilty of any of the acts of misconduct or infractions so noted; that he has never been confronted by prison officials or by anyone with any charges; that the information on which the prison officials are acting is pure hearsay and false and that were he given a chance to explain and meet such he would be absolved. He claims that there are at least four gradations or levels of Federal Correctional Institutions: (1) the honor farms; (2) the correctional institutions (Sandstone included); (3) the penitentiaries and (4) finally, the maximum security institutions; that the incidence of parole, at least for first time offenders such as himself, is much greater from the honor farms and correctional institutions than from the other type of institutions and that his transfer to the Terre Haute, Indiana, penitentiary automatically lessens his chance for parole since the percentage of inmates paroled from that institution is far less than from Sandstone; that his disciplinary record will militate against him at Terre Haute and he fears will chill his chances for parole, particularly since the mere fact that he is so transferred augurs that he has not been a model prisoner at Sandstone. The warden agrees in general terms with petitioner's figures as to the numbers of prisoners paroled at the various type institutions, but points out quite logically that the character of the inmates determines the percentage or incidence of pa-

role and that since the greater security institutions have a much larger population of repeaters and multioffenders it is to be expected that the percentage decreases accordingly. Though petitioner's counsel stressed these figures, he has produced no evidence, nor could he it would seem, that the parole boards in any way predetermine any percentage or number of persons to be treated favorably at certain institutions, with a greater number at some than at others. Petitioner has lost no good time credit against his sentence, but has been in segregated confinement at Sandstone for some period.

 The petition filed with this court is not a clear statement as to the basis for the requested relief. It is quite obvious to the court that the Civil Rights Act, 42 U.S.C. § 1983, does not apply to actions on the part of the Federal Government and thus such statute forms no grounds for relief. It is also clear that disciplinary actions taken by prison authorities are not reviewable by the courts in the absence of a showing that they constitute "cruel and unusual punishment" as prohibited by the Eighth Amendment, or that they have been imposed with such invidious discrimination as to deny Equal Protection under the Fourteenth Amendment. Burns v. Swenson, 430 F.2d 771, 775 (8th Cir. 1970); Howard v. Swenson, 426 F.2d 277 (8th Cir. 1970); Jackson v. Bishop, 404 F.2d 571 (8th Cir. 1968). The evidence does not indicate a denial of such constitutional rights in this case nor that an intended transfer is cruel and unusual punishment. The only possible grounds for supporting the petition, though not well articulated therein, is the contention that petitioner is "condemned" by notations in his file without procedural due process, with no notice to him of the charges, no hearing and no opportunity to confront and examine the witnesses against him.

 It is established that a prisoner has no constitutional right to a full-blown administrative hearing prior to the imposition of disciplinary sanctions such as segregated confinement for violation of prison regulations. Thus, the Eighth Circuit in Courtney v. Bishop, 409 F.2d 1185, 1188 (8th Cir. 1969), held:

> Appellant also complains of the district court's holding that he was not entitled to a hearing before an appropriate prison board of inquiry prior to being placed in solitary confinement or shortly thereafter. Judge Harris' interpretation of the prison rules designed to regulate the treatment of inmates persuaded him to conclude that appellant's misconduct did not necessitate a hearing. This phase of the case obviously relates to the internal affairs of the penal institution. Where, as here, the lack of an inquiry did not deprive the prisoner of a fundamental constitutional right, the courts will not interfere.

See also Burns v. Swenson, *supra*, 430 F.2d at 779.

 Finally, the transfer of a prisoner from one correctional institution to another, whether such transfer is motivated by disciplinary problems or other administrative considerations, is generally not subject to judicial review. The applicable statutes particularly 18 U.S.C. § 4082(b) "place responsibility upon the Attorney General and not upon the courts to designate the place at which a convicted prisoner shall serve his sentence." Holland v. Ciccone, 386 F.2d 825, 827 (8th Cir. 1967). Since such a decision involves the exercise of unique administrative expertise, as well as considerations of population in various institutions, types of prisoners and other factors, substantial deference to the prison authorities is appropriate in such matters.

 The petitioner's real complaint is his as yet unsubstantiated apprehension that the authorities who pass on some later application for parole will conclude, on the basis of the misconduct reports in his file and his transfer to what he asserts is a higher security in-

stitution, that he is unfit for parole. There are two answers to this: First, the mere anticipation that parole may be denied at some future time does not at this point present a question ripe for judicial scrutiny. Second, 28 C.F.R. Sections 2.14 through 2.17 give the parole applicant certain procedural rights when he becomes eligible for parole. The regulations permit the prisoner to explain his version of the events upon which disciplinary action was taken and to offer whatever mitigating evidence he may deem appropriate to his case. The record will include the misconduct report of November 15, 1970, which carries the following notation:

"Gallagher denies doing anything wrong. Admits to the above excess clothing but claims the other accusations about smuggling money into the institution and unauthorized phone calls, are not justified."

This court's memorandum and order also will presumably appear in the record upon which the parole determinations will be made.

█ It seems to the court that what petitioner really desires is an order of this court expunging what he deems to be black marks on his record. The court is wont to say that, having heard such evidence as was produced, it is clear that there was no semblance of a real hearing afforded petitioner as a court thinks of it nor a chance of confrontation of witnesses in connection with the matters placed on his record. The claimed unauthorized phone call noted on December 10, 1969 certainly hangs by a mere thread, particularly when the fact appears that it was from an Internal Revenue Agent investigating a possible tax fraud. It seems highly unlikely to the court that petitioner would knowingly violate rules, not for the purpose of talking to some friend or compatriot, but to a government agent unless he had, or held a bona fide belief that he had permission of some sort. Petitioner's explanation of this on the witness stand rang true and appeared reasonable and

sincere. The information concerning petitioner's alleged smuggling of $20 into the institution is based solely on a report from a now discharged prisoner whom petitioner claims was a "stool pigeon" and whom it is claimed left the institution grounds while an inmate to procure some intoxicating liquor. As to the possession of Visine Eye Drops, petitioner's claim seems quite reasonable that such was consented to in advance at least tacitly by a prison medical official who was unable to furnish the same. The explanation for the alleged gambling charge was credible as was petitioner's claimed possession of extra clothing. The court realizes that the government did not attempt before the court to rebut this evidence, taking the view quite correctly that in the final analysis such was not a matter for this court's review. The court is also aware that defendant is described in the file as a "con man"; nevertheless, from the evidence presented these are the court's succinct impressions. Be that as it may, the court is not ruling on the merits of these claims, nor does the court intend to hold that in disciplinary matters a hearing must necessarily be afforded even though the procedures such as were followed in this case are at least somewhat suspect due process-wise. Parole is of course not a legal right but rather a matter of grace and if something occurred which chilled a chance of early parole it is a grave question whether such violates constitutional rights in any event.

█ Courts of course must defer to the prison authorities and parole board on the ultimate question of whether parole ought to be granted. Brest v. Ciccone, 371 F.2d 981 (8th Cir. 1967). It is hoped however that parole authorities who may some day peruse this petitioner's record will recognize that disciplinary actions were taken pursuant to one-sided misconduct reports and are not unimpeachable. While this court does not attempt nor intend to rule on the merits of the issues which precipitated the disciplinary actions of November,

1970, it cannot help but recognize the possibility that the prison authorities heard only one side of the story. Finally, however the removal and transfer of a prisoner is a matter for the Attorney General's decision, acting through prison officials, and the determination whether for disciplinary reasons, for convenience or for whatever reason, normally should not be upset by a court.

A separate order denying the petition has been entered.