Jessica **MITFORD**, on behalf of herself and all other persons similarly situated, et al., Plaintiffs,

v.

G. W. **PICKETT**, Warden, Federal Correctional Institution, et al., Defendants.

Civ. No. 71–182.

United States District Court,
E. D. Illinois.

Aug. 7, 1973.

Joseph Cohn, Cohn, Korein, Kunin & Brennan, East St. Louis, Ill., David A. Goldberger, A.C.L.U. Ill. Div., Chicago, Ill., Stanley A. Bass, N.A.A.C.P. Legal Defense, New York City, for plaintiffs.

Henry A. Schwarz, U. S. Atty., East St. Louis, Ill., for defendants.

## MEMORANDUM AND ORDER

FOREMAN, District Judge:

The plaintiffs, Jessica Mitford, a professional journalist, on behalf of herself and all other persons similarly situated, and four inmates of the United States Penitentiary at Marion, Illinois, have filed a complaint against the warden at Marion and the Director of the Federal Bureau of Prisons seeking a declaratory judgment and equitable relief from alleged violations of First Amendment rights under the United States Constitution. The declaratory and further relief is sought under the authority of 28 U.S. C. §§ 2201 and 2202. Jurisdiction is alleged under 28 U.S.C. § 1331 (questions arising under the Constitution, laws, or treaties of the United States and involving $10,000 or more) and § 1361 (relief in the nature of mandamus to compel an officer or employee of the United States to perform a duty.)

Plaintiff Mitford brings this as a class action on behalf of all members of the press who seek to interview willing prisoners for the purpose of gathering information about the prison system in order to inform the public. It is alleged that the class is so numerous that joinder of all members is impracticable, questions of law and fact are common to the class, the claims of plaintiff Mitford is typical of the claims of the class, and this plaintiff will fairly and adequately protect the interests of the class. The complaint further alleges that the defendants have acted and failed to act on grounds generally applicable to the class.

All of these allegations conform to Federal Rule of Civil Procedure 23, pertaining to the requisites for the maintenance of a class action. The defendants have offered nothing to oppose the class action, and for purposes of the present pleadings and motion, the Court will consider it as a class action.

Defendants, on May 4, 1972, filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and a Memorandum in support of the Motion. Thereafter, in June of 1972, the Court, upon suggestion of one of the attorneys for plaintiff and the agreement of defense counsel, agreed to postpone further memoranda and a decision on the Motion pending the outcome of a similar case then on appeal in the Court of Appeals for the District of Columbia. On January 9, 1973, the same attorney for plaintiff that suggested the continuance asked for a ruling on the Motion and this request was joined by another plaintiff's attorney on January 29, 1973. Plaintiffs have not filed a Memorandum opposing the defendants' Motion for Summary Judgment.

Briefly, the complaint alleges that prison officials refused to mail certain letters from the inmate plaintiffs to the plaintiff Mitford or to certain news media. This allegedly occurred over a period of time from October 21, 1971 to November 4, 1971. It is also alleged that in November, 1971, certain inmates requested that plaintiff Mitford come to Marion to interview them, that Mitford wrote to the defendant Warden indicating her desire to interview three prisoners to gather source material for a book, and that the Warden replied that as a matter of policy they did not permit interviews with Federal prisoners to safeguard their privacy.

It is contended that the actions and policies violate the First Amendment to the Constitution of the United States. Plaintiffs ask the Court to (1) declare

unconstitutional the policy of prohibiting inmates from sending grievance letters to the press; (2) declare unconstitutional the policy of prohibiting press interviews of willing prisoners; (3) enjoin the allegedly unconstitutionally overbroad regulations; and (4) direct defendants to adopt narrowly drawn constitutional regulations governing prisoner correspondence and interviews with the press.

In order to grant a motion for summary judgment under Rule 56, the pleadings, answers, and admissions on file, together with any affidavits, must show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. The defendants do not contest the facts as alleged by the plaintiffs in their complaint. Rather, they allege a change in Bureau of Prisons policy on February 11, 1972, as set forth in Policy Statement 1220.1A, "Inmate correspondence With Representatives of the Press and News Media" attached to their Memorandum as Appendix "A". Also attached as Appendix "C" is an affidavit of defendant Norman A. Carlson, the Director of Prisons, setting forth some background surrounding the promulgation of the new policy.

Under Policy Statement 1220.1A, inmates are now and have, since approximately February 11, 1972, been permitted to send any amount of mail to a specified representative of the news media at government cost. The mail is sent unopened. Incoming correspondence from a representative of the press is examined solely for contraband or for content which would incite conduct which is illegal.

Defendants contend that the first area of grievance of plaintiffs, pertaining to the prohibition of inmate letters to the press, is now moot because of the new policy statement. Plaintiffs have shown nothing to the court to indicate that the new policy, effective February 11, 1972, is not being followed and upon the assumption that it is, the issue of the prohibition on inmates mail to the press is now moot.

However, with regard to personal interviews, the Policy Statement now in effect prohibits such interviews, even when requested by an inmate, although "conversation may be permitted with inmates whose identity is not to be made public, if it is limited to the discussion of institutional facilities, programs and activities." (Policy Statement 1220.1A, Paragraph 4b(6)). It is the defendants' contention that the issue here is not one of censorship of, it is rather an issue of the right of access as distinguished from the right of expression. Furthermore, defendants argue, members of the press have no First Amendment right to access to areas not opened to the public generally.

■■ It is well settled that lawful incarceration operates to deprive a prisoner of certain rights and privileges enjoyed by people in a free society. Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356. Federal Courts should not interfere with the administration of a prison or its internal discipline unless a deprivation of constitutional rights is involved. Courtney v. Bishop, 409 F.2d 1185 (8th Cir. 1969).

Several District Courts have considered the question of the constitutionality of prohibiting members of the press from conducting personal interviews with prison inmates, and the decisions have not been unanimous. However, the majority of cases cited and found through the court's research stand for the proposition that the regulation or prohibition of personal interviews of inmates by members of the news media is a matter clearly within the discretion of the prison administration, is justified in view of the need to maintain prison discipline and order and constitutes no deprivation of a Federally protected right. See e. g., Seale v. Manson, 326 F.Supp. 1375 (D.Conn., 1971); Seattle-Tacoma Newspaper Guild v. Pagett, No. 9557 (W.D.Wash., May 5, 1972); Smith v.

Bounds, No. 2914 (E.D., N.C., March 10, 1972); Burnham v. Oswald, 333 F.Supp. 1128 (W.D., N.Y., 1971)

Only Washington Post Co. v. Kleindienst, 357 F.Supp. 779, (D.C., D.C., 1972, Supplemental memorandum, December 19, 1972) is cited to the contrary. In that decision, which is presently on appeal to the Court of Appeals for the District of Columbia, the court said that the regulation here in question was an unconstitutional infringement upon a prisoner's First Amendment right of freedom of speech.

It is noteworthy that here, as in Smith v. Bounds, supra, the inmates are permitted wide use of the mail to correspond with the press. Under the present regulations, correspondence from a member of the news media to an inmate is inspected solely for contraband. Although personal interviews with individual inmates is not permitted "conversation . . . with inmates whose identity is not to be made public" is permitted if it pertains to institutional facilities, programs and activities.

My findings and ruling here are bolstered considerably by Judge William Goodwin's opinion in Seattle-Tacoma Newspaper Guild v. Pagett, supra. The same issue was presented in that case dealing with the right to interview prisoners at the United States Penitentiary at McNeil Island, Washington. That penitentiary, like the penitentiary at Marion, Illinois, is considered a maximum security institution and the Marion penitentiary is generally referred to as *the* maximum security prison in the federal system. I find Judge Goodwin's conclusions and reasoning persuasive, where, as here, substantial privileges are afforded the prisoners to exercise their First Amendment right of speech.

The Court finds that the regulation pertaining to the limitation of personal interviews of inmates by the press is a matter within the internal affairs of the prison. This Court will not interfere with such regulation since it is apparent that although the inmates are denied a privilege enjoyed by free men, that of personal interviews by the press, such denial does not constitute a denial of the inmates right to free speech guaranteed under the First Amendment to the United States Constitution, where, as here the inmates and the press are afforded ample opportunity to correspond.

The defendants' Motion to Dismiss the Complaint is granted and the complaint is ordered dismissed.