John Alfred LEE, Appellant,

v.

Ralph H. TAHASH, Warden, Appellee.

No. 17951.

United States Court of Appeals
Eighth Circuit.

Dec. 1, 1965.

John Alfred Lee, pro se.

Robert W. Mattson, Atty. Gen., of Minnesota, for appellee, with James N. Bradford, Special Asst. Atty. Gen., St. Paul, Minn.

Before JOHNSEN, VOGEL and MATTHES, Circuit Judges.

JOHNSEN, Circuit Judge.

Appellant, an inmate of the Minnesota State Prison, sought a declaratory judgment and an injunction against the Warden on the mailing regulations of the prison and particularly in respect to the returning to him of certain letters which he had attempted to have sent out. He contended that he was entitled to maintain the action under the provisions of 42 U.S.C.A. § 1983 of the Civil Rights Acts as involving " * * * the deprivation of * * * rights, privileges, or immunities secured by the Constitution and laws * * * of the United States."

Judge Larson, after a hearing in which he provided appellant with representation of appointed counsel, granted appellee's motion to dismiss the suit for failure to state a claim and entered a judgment of dismissal. The memorandum of the court declared that as prison restrictions the regulations could not be held to be violative of any federal right of appellant either in their content, their application or their enforcement. We affirm the judgment of dismissal.

Restrictions on the extent and character of prisoners' correspondence and examination or censorship in relation thereto have always been regarded as inherent incidents in the conduct of penal institutions and the control of confinements, activities, preoccupations and other relationships therein.

As to the justiciability of this and other elements of sentence-execution generally, it is settled doctrine that except in extreme cases the courts may not interfere with the conduct of a prison, with its regulations and their enforcement, or with its discipline. See e. g., Harris v. Settle, 8 Cir., 322 F.2d 908,

910; Childs v. Pegelow, 4 Cir., 321 F.2d 487, 489; Sostre v. McGinnis, 2 Cir., 334 F.2d 906, 908; United States ex rel. Morris v. Radio Station WENR, 7 Cir., 209 F.2d 105, 107.

Attempts to have the courts deal with correspondence privilege in prisons are, as indicated, within this doctrine. Contrary to the apparent view of prisoners, and of appellant here, the privilege which an individual may enjoy on the outside of writing whatever letters he desires, on whatever subjects he sees fit, and to whatever persons he chooses, is not one to which the law gives an abstract reach into penal institutions. Cf. U. S. ex rel. Thompson v. Fay, D.C.N.Y., 197 F.Supp. 855, 856; Adams v. Ellis, 5 Cir., 197 F.2d 483, 484–485.

Thus the fact that prison authorities, whether federal or state, have refused to allow mailing of some particular letter or letters or to some particular person or persons does not of itself afford basis for a prisoner to try to get into the federal courts. Nor will the fact that particular refusals seem to him to constitute improper interpretation of the prison regulations, or erroneous judgment on the letters themselves, or different treatment in relation to them than he feels has occurred as to some other prisoner or prisoners, of itself give rise to any justiciability. Whether improper interpretation, erroneous judgment, or variant administration may be involved in the restriction of some particular correspondence is, without more, mere institutional incident and not matter of judicial domain.

■ In general, for there to be basis for a prisoner to seek judicial relief against penal-institution treatment, it must amount to unlawful administration of prison sentence. Carey v. Settle, 8 Cir., 351 F.2d 483.

■ To illustrate justiciability, unlawful administration can exist where there are aspects of institutional treatment of such character or consequences as to shock general conscience or to be intolerable in fundamental fairness. Id. Such treatment is entitled to be held to be within the ban of the Eighth Amendment as representing cruel and unusual punishment and so constituting unlawful administration of prison sentence. It may be observed in this connection that penal admeasurements made by general conscience and sense of fundamental fairness doubtless will not be without some relationship to the humane concepts and reactions of present-day social climate.

It will not ordinarily be possible to bring the actions of prison officials as to correspondence-privilege into this category of unlawful administration. Conceivably, however, in some situation such as serious or fatal family illness emotionally affecting a prisoner, there could be refusal or restriction as to correspondence which would be regarded by some courts as shocking to general conscience and intolerable in fundamental fairness.

■■ But there are other aspects in which restrictions on correspondence can be unlawful administration of prison sentence from their legal consequence or object. This will be true where the refusal to allow mailing of some particular letter or letters has effect on some absolute right, which the law secures to a prisoner despite his penal status, of such substance as to produce a denial or infringement of that right. Thus, restrictions will not be allowed to operate to deny a prisoner access to the federal courts for the presentation of alleged legal wrongs. Ex parte Hull, 312 U.S. 546, 549, 61 S.Ct. 640, 642, 85 L.Ed. 1034; Haines v. Castle, 7 Cir., 226 F.2d 591, 593. Also, restrictions will be unlawful administration if they have been imposed in discrimination against a prisoner's religious beliefs or his race. Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030.

■ The categories which have been mentioned are given in example only. They are, however, of sufficient illustrative scope to demonstrate that the present action is not one of justiciable character or substance.

The regulations which are involved permitted a prisoner to make up a list of persons with whom he wished to carry on

correspondence, limited to twelve in number, including his attorney of record and his pastor. All letters sent out or received were subject to examination or censorship, except that sealed communications could be sent to the Governor, the Attorney General, the Commissioner of Corrections, and the Warden. Letters could not be sent out "offensive to any race, nationality or religious faith" or "criticizing the law, rules, institution policy or officials". A prisoner could send out one letter per day, but receive any number. Letters to his attorney of record, to his pastor, or to the four officials to whom sealed letters could be sent, were not counted in the one letter per day limit. Permission could be requested to send out special letters extra to a former employer, to tax agencies, to law enforcement agencies, etc. As to the persons whom a prisoner wanted placed on his regular correspondence list, notice was given and request made for their consent. There were other provisions which need not here be detailed.

Appellant was demanding correspondence privilege beyond the terms and spirit of the regulations. He insisted that, "prison rules notwithstanding", he had a right to send communications to any public officials throughout the United States that he desired. He sought to send out some such letters in sealed envelopes, in disregard of censorship provisions. He wanted to mail letters to the highest official levels possible making request both for general information and for a vast abstract miscellany of federal and state statutory sections, chapters, codes, procedural rules, court decisions, etc. Thus, he addressed a letter to one of the Senators from California, of which state he claimed to be a native, setting out a page-full of such material that he wanted sent to him. He wanted to address inquiries to the Superintendent of Documents and to others about obtaining various statutory sections. He wanted to address a request to one of the federal district judges for Minnesota for legal advice on what it might be possible for him to try to do to get a state-court conviction in California set aside.

Only a part of his correspondence attempts have been mentioned. All of these were beyond or additional to the privileges afforded him by the regulations. As to some of them, the suggestion was made by the prison authorities that it would seem appropriate for him to take the matter up with the lawyer listed as his attorney of record. Particularly was this urged upon him as to the copies of statutes, decisions, etc., at which he appeared to be making simply blind blanket reach.

He was apparently attempting to acquire a prospector's accumulation, without knowledge of the contents or relationship of the materials, in the hope that perhaps something might be able to be screened out of it that would enable him to devise a theory or find a basis for making attack upon a California conviction which had been used to enhance his Minnesota sentence.

In all of the things of which appellant complains, he has shown no right secured to him by federal law which has been denied or infringed. Access to the federal courts has in no way been denied to him, as the filing of the suit which is here involved manifests. Indeed, he does not even contend that his pursuit of some way to make attack upon his California conviction was one that he hoped would make it possible for him ultimately to get into the federal courts. But even if he had so contended, such a pursuit and hope would not cause the correspondence restrictions to which he has been subjected to present any presently justiciable question on access to the federal courts.

Prison regulations are not required to provide prisoners with the time, the correspondence privileges, the materials or other facilities they desire for the special purpose of trying to find some way of making attack upon the presumptively valid judgments against them. A prisoner who believes that he has an existing meritorious basis for attacking the validity of his sentence is entitled to the opportunity of making legal assertion of it. But federal law does not create any

hunting right or license in penal institutions. Cf. Hatfield v. Bailleaux, 9 Cir., 290 F.2d 632, 640–641.

It should perhaps be observed in closing that four of the letters returned to appellant were ones which he wanted to send to his attorney of record. He argues that he ought to be held to have an absolute right to communicate to his attorney anything he saw fit. None of the letters, however, was or could be claimed to be a matter of confidential communication.

One was a request for photostatic copies of some court decisions as to which the communications officer attached a note, stating that the letter was permissible, but inquiring, "just as a suggestion", why he did not allow his counsel to handle the matter or why he wanted to order the materials requested "if he is handling the affair for you". The second one enclosed a copy of the letter which he had attempted to send to one of the federal district judges asking for legal advice, as referred to above, and the third one enclosed a copy of the letter which he had attempted to send to his California Senator. In this, he asked to have the attorney "mail it for me". The communications officer attached a note as to both letters, stating that appellant could not circumvent the regulations by seeking to have his attorney mail out letters for him which had been the subject of refusal, but adding the suggestion that perhaps if he conveyed the problem to his attorney, the latter "can take proper measures or make the right suggestions". Appellant would have none of this. Instead, he wrote another letter to his attorney denouncing the prison regulations, policies and officials, which was returned to him by the Warden as "criticizing rules, institutional policy and officials" and so being in violation of the regulations.

Other proper letters had been permitted to go out to his attorney, so that there had been no denial of the opportunity to communicate with the attorney. In what character of situation or circumstances, if any, it might be possible for denial of correspondence by a prisoner with his attorney to present a question of unlawful administration, we are not called upon to consider, for the letters here involved were without basis or substance for that question.

Affirmed.