Robert COURTNEY, Appellant,

v.

O. E. BISHOP, Superintendent of Arkansas State Penitentiary, Appellee.

No. 19312.

United States Court of Appeals Eighth Circuit.

April 21, 1969.

Rehearing Denied May 7, 1969.

Philip K. Lyon and Robert L. Robinson, Jr., Little Rock, Ark., for appellant.

Don Langston, Deputy Atty. Gen., of Arkansas, Little Rock, Ark., for appellee; Joe Purcell, Atty. Gen., of Arkansas, Little Rock, Ark., with him on the brief.

Before VAN OOSTERHOUT, Chief Judge, and MATTHES and BRIGHT, Circuit Judges.

Matthes, Circuit Judge.

Robert Courtney has appealed from the order of the United States district court dismissing his petition for relief under 42 U.S.C. § 1983.

On May 28, 1967, appellant acting pro se filed a petition in the United States district court seeking relief from alleged cruel and unusual treatment inflicted upon him during solitary confinement in Cummins Farm, a penal institution in the state of Arkansas. Philip K. Lyon and Robert L. Robinson, Jr., lawyers of Little Rock, Arkansas, were appointed to represent petitioner. At the time of the filing of the original petition appellant had been released from solitary confinement. Subsequently, however, he was again placed in isolation. This precipitated a second complaint. The allegations in the second complaint were incorporated along with the first one in a final amended complaint filed by counsel on December 18, 1967. Essentially appellant alleged that he had been arbitrarily placed in solitary confinement, and that while there he was deprived of adequate and sanitary food, medical and psychiatric treatment, and was subjected to beatings by prison officials. These circumstances and conditions, he claimed, constituted cruel and unusual punishment as applied to him.

After a hearing before Honorable Oren Harris on January 26, 1968, at which appellant was afforded a full opportunity to offer evidence in support of his charges, the court found that appellant had not been subjected to cruel and unusual punishment and dismissed his claim for relief. At that time appellant had been released from solitary confinement and had been transferred to Tucker Farm, another penal institution in Arkansas.

The sole issue here is whether the court below was wrong in dismissing the claim for relief.

The law to be applied is well settled. Lawful incarceration necessarily operates to deprive a prisoner of certain rights and privileges he would otherwise enjoy in the free society, a retraction justified by considerations underlying our penal system. Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948); Jackson v. Bishop, 404 F.2d 571 (8th Cir. 1968). A convict, however, does not lose all of his civil rights—for those that are fundamental follow him, with appropriate limitations, through the prison gate, and the walls do not foreclose his access to the courts to protect those rights. Sharp v. Sigler, 408 F.2d 966 (8th Cir., March 24, 1969); Jackson v. Bishop, *supra*. On the other hand, prison officials are vested with wide discretion in controlling prisoners committed to their custody, Douglas v. Sigler, 386 F.2d 684 (8th Cir. 1967); Stroud v. Swope, 187 F.2d 850, 851 (9th Cir. 1951), and it is elementary that unless an infringement upon constitutional or fundamental rights is involved, federal courts are naturally reluctant to interfere with a prison's internal discipline, whether the institution is federal or state. Sharp v. Sigler, *supra*; Jackson v. Bishop, *supra*.

In *Jackson*, applying the above principles, this court found that strapping a prisoner violated his fundamental right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment, and we did not hesitate to intervene to restore that right. But in *Sharp*, we sustained the district court's finding that confinement of four inmates of the Maximum Security Unit did not constitute a denial of the free exercise of their religion guaranteed by the First Amendment, and refrained from interfering with prison administration there.

Appellant frankly concedes that solitary confinement is not unconstitutional pro se. The authorities so hold. Graham v. Willingham, 384 F.2d 367 (10th Cir. 1967); Kostal v. Tinsley, 337 F.2d 845 (10th Cir. 1964). He argues, however, that the particular conditions of his confinement do constitute cruel and unusual punishment. Thus, it follows that appellant's contention presented an issue of fact for determination by the district court.

The following events, gleaned from the hearing, are pertinent:

Appellant had been placed in solitary confinement on or about April 23, 1967, and remained there for seven days. This resulted from his being intoxicated and "scratching" another inmate with a knife.

On July 17, 1967, after his first complaint had been filed, appellant assaulted another inmate, Ronnie Elser, who on January 5, 1967, had attacked appellant with a knife. It is evident that as a result of this attack there was bad blood between appellant and Elser. In explanation of his assault on Elser, appellant stated that he had been warned that Elser intended again to assault him. On the day in question, July 17, appellant was in the barracks on Cummins Farm. He observed Elser approaching and also saw a knife partly protruding from Elser's pocket. At the opportune time appellant stabbed Elser twice in his back. Appellant was immediately placed in solitary confinement and remained there until January 4, 1968. The evidence at the hearing in large measure related to the conditions attending appellant's confinement and the alleged inhuman treatment inflicted upon him during that period.

Judge Harris found that appellant was not arbitrarily subjected to solitary confinement: "It was his own conduct that made it necessary for the officials of the penitentiary, by his own admission, that required his being placed in solitary confinement." The other circumstances relied upon, such as inadequate food, improper medical attention, lack of sanitation in the cell and an assault upon appellant in November, 1967, by two guards, were also carefully considered by Judge Harris. He found that appellant had failed to prove the exist-

ence of the claimed cruel and unusual punishment.

"* * * particularly with reference to medical treatment, with reference to the allegation of being placed in cells with active TB patients, with reference to unsanitary food being prepared, and matters of that kind. The petitioner's own witnesses failed to sustain that contention, and therefore there is no merit to such contentions whatsoever.

"With reference to the physical abuse, which seems to have surrounded the incident of November 7th and 8th, the Petitioner Courtney admitted the incidents that he himself brought on with reference to disciplinary action in not only tearing up the cell but destroying the property and defying the officers or the officials of the penitentiary when they themselves came in to try to do something about it. By his own admission he resisted and by the description of his own witnesses he had to be restrained."

Our examination of the record convinces us that the district court's findings are supported by appellant's own evidence and that such findings are in no sense clearly erroneous.

▮ Appellant also complains of the district court's holding that he was not entitled to a hearing before an appropriate prison board of inquiry prior to being placed in solitary confinement or shortly thereafter. Judge Harris' interpretation of the prison rules designed to regulate the treatment of inmates persuaded him to conclude that appellant's misconduct did not necessitate a hearing. This phase of the case obviously relates to the internal affairs of the penal institution. Where, as here, the lack of an inquiry did not deprive the prisoner of a fundamental constitutional right, the courts will not interfere.

We have considered the contentions of appellant relating to procedural matters in the district court and find them lacking in substance.

The judgment is affirmed.