Keith Milton **RHINEHART**, Plaintiff,

v.

**B. J. RHAY**, Robert A. Freeman and William P. Macklin, Defendants.

**No. 8448–Civ.**

United States District Court,
W. D. Washington, N. D.

May 27, 1970.

See also 9 Cir., 409 F.2d 208.

Lundin, Estep, Sindell & Haley, Landon R. Estep, Seattle, Wash., for plaintiff.

Slade Gorton, Atty. Gen., Paul J. Murphy, Asst. Atty. Gen., of the State

of Washington, Olympia, Wash., for defendants.

## MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

WILLIAM P. GRAY, District Judge.*

This is an action for damages, under the civil rights laws of the United States, 42 U.S.C. §§ 1983 and 1985(3), brought against the Superintendent of the Washington State Penitentiary at Walla Walla and two of his principal assistants at that institution. At the time the action was filed, the plaintiff was a prisoner at Walla Walla. Subsequently, he has been released, conditionally, pursuant to an order of this court in the course of habeas corpus proceedings challenging the constitutional validity of certain aspects of the trial that had resulted in the present plaintiff's conviction and incarceration.

In this action, the plaintiff complains of the treatment accorded him at Walla Walla during the period of his confinement there from July 10, 1967, until about August 1969. The defendants, through the Attorney General of the State of Washington, have moved for summary judgment and have submitted affidavits and a legal memorandum in support of such motion; the plaintiff has submitted a brief and affidavits in opposition to such motion; all of these documents have been considered by the court, and the court also heard oral arguments on the matter on March 6, 1970. For reasons hereinafter set forth, the motion for summary judgment will be granted.

The plaintiff asserts six bases upon which he contends that his rights under the United States Constitution were violated by the defendants under color of state law (42 U.S.C. § 1983). The following numbered paragraphs of this memorandum will summarize these respective six contentions and will indicate my reasons for their rejection.

1. During his confinement at Walla Walla, the plaintiff wrote many letters to his attorneys in Seattle, some of which were mailed in regular course; others (the defendants say seven; the plaintiff contends that there were more) were intercepted and held by the prison officials, on authority of certain Washington State prison regulations pertaining to mail privileges. Such regulations provide that inmates may not send letters containing vulgar or obscene matter nor may they send out complaints about institution personnel, inmates or policies. Matter derogatory to any person or group on the basis of race or religion or political affiliation is also proscribed (MO Instruction 330.5A). The regulations impose no limit upon the letters that an inmate may send to his attorney (MO Instruction 330.2, par. 27), but such correspondence is also subject to the above mentioned prohibitions as to content.

In the course of this litigation the defendants have submitted to counsel for the plaintiff and to the court copies of the seven letters that they acknowledge having intercepted. Parts of these letters do refer to the then anticipated habeas corpus proceedings; and some of them refer, with varying detail, relevance and coherence, to the many reported cases dealing with sodomy that were the products of the plaintiff's legal "research".

However, interspersed through these letters are reports of the plaintiff's alleged observations of "boundless" acts of "oral sodomy" among the population at the prison. The letters also contained expressions of the plaintiff's opinion that sodomy and other comparable acts between consenting adults should be made lawful. Taken as a whole, it seems to me that the letters could reasonably be suspected to reveal a pathological fixation with the subject of sodomy.

---

* Honorable William P. Gray, United States District Judge for the Central District of California, sitting by designation.

It is readily understandable that the defendants concluded that portions of the subject letters were in violation of the hereinabove mentioned prison regulations, and it is not hard to understand the defendants' reluctance to forward such communications to the addresses. This reluctance doubtless was solidified by the fact that the plaintiff, in the third of the seven letters, asked his attorney to retain all such correspondence in order that it might later be published "nationwide".

In seeking to determine whether the plaintiff's constitutional rights were violated by the limited withholding of mail, we start with the proposition that reasonable restriction upon prisoners' correspondence has regularly been held to be an aspect of prison administration and that the courts should not interfere therewith except in extreme cases. Lee v. Tahash, 352 F.2d 970 (8th Cir. 1965). Such restriction, of course, must not be so designed as to deny a prisoner reasonable access to the courts or to his attorney so that the latter might help him in perfecting access to the courts. Lee v. Tahash, *supra*.

Here, it is quite apparent from the documentary submissions of the parties that the plaintiff was not denied reasonable access to his attorneys. Considerable interchange of correspondence did take place, and, as noted at the outset of this memorandum, habeas corpus proceedings were instituted and vigorously prosecuted by the attorneys during the plaintiff's incarceration. The intercepted letters were withheld, not for the purpose of interfering with the attorney-client relationship, but because of extraneous comments contained therein that the defendants believed to be otherwise objectionable and in violation of prison regulations. Under these circumstances, it is the conclusion of this court that the plaintiff's civil rights under the United States Constitution were not violated by the withholding of the letters from the mails.

In making this ruling, I do not express approval or disapproval of the prison regulations here concerned, nor do I seek to evaluate the wisdom of the defendants in the manner in which they applied such regulations to the plaintiff's correspondence. It is not the business of federal courts to supervise state prison regulations and practices. Hatfield v. Bailleaux, 290 F.2d 632 (9th Cir. 1961).

2. The plaintiff next complains that the interception of his letters to his attorneys required the latter to journey many times from Seattle to Walla Walla to visit him, inasmuch as they could not depend upon mail communications getting through.

As is above indicated, there was a substantial interchange of communication between the plaintiff and his attorneys, and the exhibits submitted in this action reveal that the defendants gave orders that the plaintiff be advised of the reasons for blocking passage of certain of his letters. It would appear that unrestricted correspondence with his attorneys would have been permitted if the plaintiff had refrained from making the extraneous and rather extreme comments that were found to have been violative of the prison regulations.

If the attorneys had felt it necessary to make certain that the legitimate channels of communication remain unblocked, they could have inquired of the defendants or could have engaged local counsel to look into the matter. Thus, the assumed need for the plaintiff's counsel to undertake the expense of traveling to Walla Walla is not chargeable to the defendants.

Moreover, the ruling that the interception of the letters is not actionable forecloses any liability with respect to the present contention.

3. During his stay in the state prison at Walla Walla, the plaintiff was kept a total of thirty-seven days in solitary confinement. He does not complain about the bedding or the food or the temperature of his cell. He does say,

however, that he had electric light only during meal times and otherwise was in darkness, and he contends that this, of itself, constitutes cruel and unusual punishment. The record indicates that the solitary confinement was imposed as a disciplinary measure by an administrative committee at the prison following a hearing which grew out of the plaintiff's refusal to accept work in the steward's department, the staff medical personnel having disagreed with the plaintiff's contention that he was physically unable to do such work. The plaintiff finally agreed to accept his work assignment, was thereupon released from isolation, and did perform his allotted tasks in the steward's department for more than a year thereafter.

There appears nothing here to require an exeption to the general rule that federal courts will not interfere with normal prison administration and discipline. Courtney v. Bishop, 409 F.2d 1185 (8th Cir. 1969); Stroud v. Swope, 187 F.2d 850 (9th Cir. 1951).

4. At the hearing on the defendants' motion for summary judgment, the plaintiff's attorney contended that the reason the plaintiff was put in solitary confinement had nothing to do with his refusal to work, but was for "other reasons". However, the plaintiff, in his later submitted affidavit, asserts that he was placed in solitary confinement as a result of his having told the prison "court" that he would be willing to work only in a job that did not require long periods of standing. At another place in his affidavit, he does state that the "entire matter" of his having been placed in solitary confinement was "initiated originally" by his having protested the policy of the prison that required each inmate to have a conference with the Catholic chaplain, and by his insistence upon referring to such chaplain as "Mr. McCabe" rather than "Father McCabe".

To the extent that the plaintiff seeks damages for this aspect of his administrative punishment, his claim is frivolous. It is apparent from the documents submitted by the parties, and particularly from the plaintiff's own affidavit, that he was a very antagonistic and uncooperative prisoner and that his attitudes and expressions would have tried the patience of the most understanding of prison officials. To whatever extent, if at all, the plaintiff's imprisonment in solitary confinement was for reasons other than his refusal to work, it is evident that such punishment was minor and stemmed from the plaintiff's own conduct. This court can find nothing in the United States Constitution or the Civil Rights Act that would justify vindicating such conduct by entertaining a claim for damages. Courtney v. Bishop, 409 F.2d 1185 (8th Cir. 1969).

■ 5. The plaintiff contends that during his incarceration at Walla Walla, he was given unneeded sedatives and other medical treatment against his will, and that this constitutes a violation of his civil rights. It is not the responsibility of a federal court to second guess the medical diagnosis or treatment prescribed by state prison officials. United States ex rel. Knight v. Ragen, 337 F.2d 425 (7th Cir. 1964); Mayfield v. Craven, 299 F.Supp. 1111 (E.D.Cal.1969).

■ 6. The plaintiff's sixth complaint is that the "legal file" that he was developing and maintaining was destroyed by the prison officials. The defendants, by affidavit, assert that the legal file was given to the plaintiff just before the visit of his attorneys on one occasion, and that the prison officials have never seen it since. The only issue that this court could try would be the matter of whether or not the file was negligently lost. Here again, no constitutional issue is presented.

For the reasons hereinabove set forth, the defendants' motion for summary judgment must be granted, and a separate judgment to such effect will be filed contemporaneously with this memorandum. This memorandum shall constitute findings of fact and conclusions of law, as provided in Rule 52, Federal Rules of Civil Procedure.