459 F.2d 574
 James Talmadge MOORE, a/k/a Muhammed James Moore, Appellant,
v.
Dr. P. J. CICCONE, Director, United States Medical Center
for Federal Prisoners, Springfield, Missouri, Appellee.
 No. 72-1194.
 United States Court of Appeals,
Eighth Circuit.
 May 3, 1972.
 
 Before MATTHES, Chief Judge, and MEHAFFY, GIBSON, LAY, HEANEY, BRIGHT, ROSS and STEPHENSON, Circuit Judges, sitting en banc.
 MATTHES, Chief Judge.
 
 
 1
 Appellant Moore is an indicted, unconvicted inmate at the federal prison Medical Center at Springfield, Missouri, committed for a pretrial examination pursuant to 18 U.S.C. Sec. 4244. He filed pro se a petition in the Western District of Missouri alleging official delay, censorship and reading of his incoming mail from his attorney and religious advisers.
 
 
 2
 Although he styled his claim as habeas corpus and included no prayer for particular relief, clearly appellant was seeking not release from incarceration but equitable relief from some aspects thereof. The district court nevertheless treated the action as a habeas petition. Consequently, the district court record consists solely of appellee's response to the show cause order and appellant's petition and traverse. Appellee's response includes only a copy of the correspondence regulations and the Assistant United States Attorney's self-serving declaration that those regulations are necessary and adhered to. Appellant's petition and traverse merely recite his self-serving allegations of censorship.
 
 
 3
 The district court, in a short memorandum opinion, denied relief, citing, inter alia, Lee v. Tahash, 352 F.2d 970 (8th Cir. 1965) and Austin v. Harris, 226 F. Supp. 304 (W.D.Mo.1964). The district court subsequently denied a certificate of probable cause for an in forma pauperis appeal, holding that filing the Notice of Appeal thirty-five days after entry of the order, and without a showing of excusable neglect was untimely.
 
 
 4
 A panel of this court granted appellant's Application to Appeal in forma pauperis, considered his claim and filed an opinion modifying the decision of the district court relating to opening and inspection of incoming and outgoing mail between inmates of the Medical Center and the courts or the inmate's attorney. Upon petition of appellee the cause was transferred and submitted to the court en banc.
 
 
 5
 Consideration of the original files of the district court relevant to the censoring of appellant's mail reveal that the correspondence regulations at the Medical Center provide in pertinent part:
 
 
 6
 "3. PROCEDURES:
 
 
 7
 ******
 
 
 8
 * * *
 
 
 9
 b. Approval of Correspondence:
 
 
 10
 ******
 
 
 11
 * * *
 
 
 12
 (4) Attorneys:
 
 
 13
 Inmates shall be permitted to correspond with attorneys of record. Inmates may also be permitted to initiate Special Purpose Correspondence with attorneys for the purpose of arranging for services. Free access to courts is a right that must be respected and protected. Inmates have an absolute right to contact the courts, attorneys, and other persons who may significantly enter into their cases. Extreme care must be taken to appropriately assist them in handling such correspondence. Incoming mail from courts and attorneys will be opened and inspected for contraband only and then sent direct to the inmate. (Emphasis supplied.)
 
 
 14
 c. Incoming and Outgoing Letters:
 
 
 15
 (1) There will be no limit to the number of incoming or outgoing letters unless the privilege is abused.
 
 
 16
 (2) There is no limit to the number of pages in letters unless the privilege is abused.
 
 
 17
 ******
 
 
 18
 * * *
 
 
 19
 d. Inspection: All incoming and outgoing mail will be inspected for contraband. On a selective basis letters may be read for any of the following reasons:
 
 
 20
 (1) To insure the security of the institution.
 
 
 21
 (2) To ascertain the relationship between the inmate and the community and as a means of evaluating the progress of an inmate within the institution.
 
 
 22
 (3) To discern any violation of Federal Laws; ie, threats against individuals, extortion, etc.
 
 
 23
 ******
 
 
 24
 * * *4. UNSENTENCED PRISONERS: There will be no limit or restriction on correspondence for unsentenced prisoners. Attorneys will be included with those mentioned in Policy Statement H-7300.21, dated 9-29-67, to whom sealed letters can be mailed. Other letters will be inspected for contraband only and every attempt will be made to allow unrestricted mail privileges as long as sound custodial practices are followed. Use of certified or registered mail will be permitted providing the inmate has funds available for use of these services." (Emphasis supplied.)
 
 
 25
 ******
 
 
 26
 * * *
 
 
 27
 Policy Statement H-7300-23A.
 
 
 28
 Another regulation relating only to unconvicted prisoners provides in pertinent part:
 
 
 29
 "2. PROCEDURES:
 
 
 30
 a. Within 48 hours after admission, the caseworker will ascertain from the inmate, and make a record of, the name and address of his . . . Attorney. . . . Thereafter, the inmate may correspond by sealed mail, via caseworker, with the indicated attorney(s) and may receive visits from him in accordance with regular established procedures. . . . Incoming mail from Attorneys will be inspected for contraband". (Emphasis supplied.)
 
 
 31
 Policy Statement H-7300.21.
 
 
 32
 Appellant's terse petition makes the conclusory allegation that pursuant to, and/or in contravention of, these regulations his incoming mail from his attorney and his Orthodox Moslem advisers is being opened, read and/or censored. His complaint, as we understand it, is that these actions abridge his rights of access to the courts, effective assistance of counsel, and free exercise of religion. It is to that argument that we now turn.
 
 
 33
 The Constitutional Validity of the Regulations
 
 
 34
 We observe at the outset that: "Federal Court review of state [or federal] prisoner's complaints arising out of the internal administration, conditions, or discipline in the prison is narrowly circumscribed. Unless deprivations of constitutional dimensions are involved, Federal Courts should be loathe to interfere."
 
 
 35
 Burns v. Swenson, 430 F.2d 771, 775 (8th Cir. 1970) cert. denied, 404 U.S. 1062, 92 S.Ct. 743, 30 L.Ed.2d 751 (1972). See also, Courtney v. Bishop, 409 F.2d 1185, 1187 (8th Cir.) cert. denied, 396 U.S. 915, 90 S.Ct. 235, 24 L.Ed.2d 192 (1969); Sharp v. Sigler, 408 F.2d 966, 971 (8th Cir. 1969); Jackson v. Bishop, 404 F.2d 571, 577 (8th Cir. 1968); Lee v. Tahash, supra, 352 F.2d at 972, Konigsberg v. Ciccone, 285 F.Supp. 585 (W. D.Mo. 1968) aff'd, 417 F.2d 161 (8th Cir. 1969) cert. denied, 397 U.S. 963, 90 S.Ct. 996, 25 L.Ed.2d 255 (1970). But when the allegation is that a prisoner's constitutional rights are being infringed by prison regulations, the federal courts must explore the bases of the claim because "[a] prisoner retains all the rights of an ordinary citizen except those expressly, or by necessary implication, taken from him by law." Coffin v. Reichard, 143 F.2d 443, 445 (6th Cir. 1944) cert. denied, 325 U.S. 887, 65 S.Ct. 1568, 89 L.Ed. 2001 (1945); and constitutional rights need be denied prisoners only to the extent "justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948).
 
 
 36
 Thus when the claim is that a prison regulation infringes upon a constitutional right, "a court must balance the asserted need for the regulation in furthering prison security or orderly administration against the claimed constitutional right and the degree to which it has been impaired." Smith v. Robbins, 328 F.Supp. 162, 164 (D.Me.1971) aff'd 454 F.2d 696 (1st Cir., 1972). See also, Marsh v. Moore, 325 F.Supp. 392 (D. Mass.1971); Palmigiano v. Travisono, 317 F.Supp. 776 (D.R.I.1970). This balancing approach is implicit in our holding in Burns v. Swenson "that correspondence with the ACLU may be subjected to reasonable regulation consistent with legitimate policies of internal prison administration and security, so long as such regulation does not become a subterfuge to deny Burns access to the ACLU, and through it, to the courts." 430 F.2d at 777. See also, Sharp v. Sigler, supra, 408 F.2d at 970.
 
 
 37
 This appellant is pressing at least three constitutional rights: the right of "access of prisoners to the courts", Johnson v. Avery, 393 U.S. 483, 485, 89 S.Ct. 747, 749, 21 L.Ed.2d 718, 721 (1969); his right to effective assistance of counsel for the preparation of his defense, Johnson v. Avery, supra, McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); and his right to the free exercise of his religion, Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); Sharp v. Sigler, supra, 408 F.2d at 970. Arrayed against those rights are the very important interests of prison security and administration. The task for the district court is to determine, by taking evidence and finding facts, the precise manner in which mail is handled at the Center, the extent to which this impedes appellant's asserted rights, and the justifications the prison administration can offer for subordinating those rights with the particular procedures used. Only then can the competing interests be properly weighed. Clearly that task cannot be completed on the record now before us.
 
 
 38
 Some courts confronted with similar regulations have greatly narrowed them. Smith v. Robbins; Marsh v. Moore; Palmigiano v. Travisono, supra. There are opinions to the contrary. Sostre v. McGinnis, 442 F.2d 178, 201 (2nd Cir. 1971). But in all those cases the trial courts had made an extensive record and findings of fact. Here the district court concluded, without formally styling it a finding of fact, that the "inspection does not involve any marking out, editing or other form of deletion from the written content," and that such "inspection of mail is necessary to the security and maintenance of order among unconvicted inmates at the Medical Center;" but there was never any evidence taken to confirm or refute those conclusions.
 
 
 39
 We think such evidence is essential to the proper disposition of this case and for that inquiry, and for the formulation of an appropriate remedy if necessary, we remand. In doing so, we note that the district court may deem it advisable to appoint counsel for appellant, and, to prevent the filing of this type complaint from guaranteeing a "vacation" from prison to the courthouse, may in its discretion deem it sufficient to take appellant's testimony by affidavit or deposition within the Springfield facility. See Nolan v. Scafati, 430 F.2d 548, 550 (1st Cir. 1970).
 
 
 40
 Reversed and remanded for a full hearing and a decision consistent with established precedent above cited.
 
 
 41
 LAY, HEANEY, BRIGHT and ROSS, Circuit Judges (concurring).
 
 
 42
 Although we have no objection to exploring the issues through an evidentiary hearing we feel it necessary to make certain additional observations.
 
 
 43
 The petition filed challenges the censorship of petitioner's mail by prison authorities. Petitioner is an unconvicted inmate of the Springfield Medical Center. He is presently confined to Springfield Medical Center under a court order issued pursuant to 18 U.S.C. Sec. 4244 for a pretrial medical examination. Petitioner complains that his mail with his attorney and with the court is being opened and censored by prison officials. The mail regulations of the Medical Center provide in Paragraph 3(b) (4) that: "Incoming mail from courts and attorneys will be opened and inspected for contraband only and then sent direct to the inmate." Paragraph 3(d) provides for inspection of all incoming and outgoing mail for contraband. Mail of unsentenced prisoners is dealt with in Paragraph 4 as follows:
 
 
 44
 "There will be no limit or restriction on correspondence for unsentenced prisoners. Attorneys will be included with those mentioned in Policy Statement H-7300.21, dated 9-29-67, to whom sealed letters can be mailed. Other letters will be inspected for contraband only and every attempt will be made to allow unrestricted mail privileges as long as sound custodial practices are followed. Use of certified or registered mail will be permitted providing the inmate has funds available for use of these services."
 
 
 45
 The district court approved these regulations. The actions of the officials in opening and reading petitioner's mail were further sanctioned on the grounds that Moore had signed an authorization allowing prison officials to open and examine all mail matter.
 
 
 46
 Although considerations of prison discipline and order make necessary judicial deference to prison regulations, the fundamental right of access to the courts cannot be curtailed or impeded by such rules. Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); Cochran v. Kansas, 316 U.S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453 (1942); Stilner v. Rhay, 322 F.2d 314 (9 Cir. 1963). See also Cross v. Powers, 328 F.Supp. 899, 901 (W.D.Wisc.1971) and cases cited therein. Only undelayed, uncensored, unrestricted delivery of legal correspondence can secure this basic right. We have no difficulty in endorsing the language of Chief Judge Bailey Aldrich of the First Circuit where he recently observed:
 
 
 47
 "However strongly the warden may feel about a possible indignity to the prison administration in a suggestion by the court that it is not to be trusted not to read the letter, this misses the point. The court does not suggest that the warden is untrustworthy. Rather, it is that a prisoner, and possibly some attorneys, may feel, if only to a small degree, that someone in the chain of command may not be trusted, and that the resulting fear may chill communications between the prisoner and his counsel. Once it is granted, as the warden now concedes, that the prisoner has a right to have the confidence between himself and his counsel totally respected, the burden must be on the warden to show a need for any act which could produce even a suspicion of intrusion. If a prisoner can see no good reason for opening a letter in his absence, it would not be unnatural for him to suspect a bad one. Inasmuch as the warden has failed to suggest any reason that seems adequate even to us, we see no reason to leave such possible apprehensions on such an important matter as right to counsel in the minds of the prisoner or his attorney." Smith v. Robbins, 454 F.2d 696, 697 (1 Cir. 1972).
 
 
 48
 See also McDonough v. Director of Patuxent, 429 F.2d 1189 (4 Cir. 1970); Coleman v. Peyton, 362 F.2d 905 (4 Cir. 1966). Thus, while control of the mails may be a proper function of penal administration, overly broad regulations which permit the opening and inspection of legal mail cannot be generally approved. The search for contraband, when extended to ordinary correspondence, seems both remote and speculative. Marsh v. Moore, 325 F.Supp. 392, 395 (D. Mass.1971). Other legitimate alternatives may be utilized to ferret out any weapons or escape materials which may be contained in these incoming mails without breaking the seals of such letters.[1] Cf. Palmigiano v. Travisono, 317 F.Supp. 776, 790 (D.R.I.1970). Nor do we agree that the waiver signed by this prisoner who has been held for psychiatric observation could effectively authorize the opening and inspection of mail of this type. Cf. Palmigiano v. Travisono, supra, at 792.
 
 
 
 [1]
 In the interest of prison security, prison authorities are free to exercise their discretion as to the means to be used for discovery of contraband in incoming mail. Manipulation of the envelope, use of fluoroscopes and metal detecting devices or other alternative means of detection may be employed in this search. See Marsh v. Moore, 325 F.Supp. 392, 395 (D.Mass.1971). If such devices prove incapable of detecting contraband, and if prison officials believe that there is a real possibility that such items will be included in mail from attorneys, a rule could be promulgated that any correspondence from legal counsel which is marked "Privileged" will be opened and inspected for contraband, but only in the presence of the inmate. Delivery of the letter must always be made immediately after the inspection without reading or censoring the contents. Smith v. Robbins, 328 F. Supp. 162, 165 (D.Maine 1971), aff'd 454 F.2d 696 (1 Cir. 1972). If this procedure is instituted correspondence from attorneys not marked privileged could be opened outside the prisoner's presence, but even in this instance such mail must be inspected and delivered as soon as received and cannot be read, censored or delayed in any manner