**Robert O. McDONNELL, etc.,**
**Appellant,**

v.

**Charles L. WOLFF, Jr., etc., et al.,**
**Appellees.**

**Robert O. McDONNELL, etc., Appellee,**

v.

**Charles L. WOLFF, Jr., etc., et al.,**
**Appellants.**

**Nos. 72–1331, 72–1332.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 9, 1973.

Decided Aug. 2, 1973.

Rehearing Denied Sept. 12, 1973.

Douglas F. Duchek, Cline, Williams, Wright, Johnson & Oldfather, Lincoln, Neb., for McDonnell.

Melvin K. Kammerlohr, Asst. Atty. Gen., Dept. of Justice, Lincoln, Neb., for Wolff.

Before LAY, HEANEY and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

Robert O. McDonnell brought this civil rights action on behalf of himself and other inmates of the Nebraska Penal and Correctional Complex. He alleged that disciplinary proceedings in the Complex were conducted without regard for procedural or substantive due process, that the inmate legal assistance program did not meet constitutional stand-

ards, and that the regulations regarding prisoners' mail were violative of the inmates' constitutional rights.

The trial court, relying on our decision in Morrissey v. Brewer, 443 F.2d 942 (8th Cir. 1971), held that the Complex was not required to afford procedural due process to inmates in disciplinary hearings, but that it was required to afford substantive due process to inmates. It also held that a rule limiting legal assistance to help, which could be provided by a designated inmate, was reasonable and valid; but that a rule limiting the use of the library to seven hours per week was impermissible, and that a regulation requiring that *all* incoming and outgoing mail be read and inspected was improper.[1]

McDonnell and the defendants appeal. McDonnell contends the trial court erred in holding that minimum due process requirements were not applicable to prison disciplinary hearings, and that the inmate legal assistance program met constitutional standards. The defendants contend that substantive due process was unavailable to inmates, and that the court erred in striking down the prison regulations with respect to the use of the prison library and mail censorship.

## I. Due Process

■ The District Court reluctantly relied on our Morrissey v. Brewer decision, in holding that procedural due process requirements were not applicable to disciplinary hearings. It stated:

"Courts have begun in recent years to recognize that fundamental due process is a right of all persons, including inmates, and have specifically held that before good time or other substantial rights may be taken there must be an impartial tribunal, notice, a hearing, a right to cross-examination of adverse witnesses, that the decision be based upon evidence adduced at the hearing, and that the inmate be allowed representation if he so de-

sires. *See, e. g.,* Landman v. Royster, 333 F.Supp. 621 (E.D.Va.1971).

"However, the Eighth Circuit has not yet followed the trend regarding application of procedural due process to good time revocation, but continues to view the problem in terms of the right/privilege dichotomy that was popular prior to Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) and its progeny. Douglas v. Sigler, 386 F.2d 684 (8th Cir. 1967). Such a position was recently affirmed in Morrissey v. Brewer, 443 F.2d 942 (8th Cir. 1971), which, although the question was then of parole revocation, must be applicable to good time as well. * * * "

McDonnell v. Wolff, 342 F.Supp. 616, 627–628 (D.Neb.1972). It's reluctance was well founded. This Court was reversed by the Supreme Court. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In light of *Morrissey,* we subsequently held that minimum procedural due process requirements are applicable to prison disciplinary hearings. Remmers v. Brewer, Warden, et al., 475 F.2d 52 (8th Cir. 1973); Dodson, etc. v. Haugh, etc., et al., 473 F.2d 689 (8th Cir. 1973).

■ In view of the developments in the law, subsequent to trial, the defendants no longer contend that inmates are not entitled to minimum due process in disciplinary hearings which may result in the loss of good time, or the imposition of other substantial penalties. Instead, they argue that existing procedures provide such due process. Under present procedures, inmates are given an informal hearing before an adjustment committee but are not given: (a) notice of the charges in time to prepare a defense; (b) an opportunity to summon, confront or cross-examine witnesses; (c) legal assistance in the presentation of a defense; or (d) a written statement by the fact finders as to the evidence relied on and reasons for the action taken. We find no merit to the ar-

1. See, McDonnell v. Wolff, 342 F.Supp. 616, 640 (D.Neb.1972).

gument that existing procedures provide minimum due process.[2]

■ In our view, the procedural requirements outlined by the Supreme Court in *Morrissey,* and as supplemented by Gagnon, Warden v. Scarpelli, 411 U. S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), should be generally followed. We believe, however, that specific requirements, including the circumstances in which counsel may be required, should be laid down by the District Court after further hearings. See, Remmers v. Brewer, Warden, et al., *supra;* Dodson, etc. v. Haugh, etc., et al., *supra.*

■■ The trial court properly held that Fourteenth Amendment substantive due process requirements are applicable to disciplinary proceedings. Even in those earlier cases in which we held procedural due process inapplicable in comparable settings, we recognized that administrative determinations must not be arbitrary. See, Morrissey v. Brewer, *supra,* 443 F.2d at 950; Douglas v. Sigler, 386 F.2d 684, 687 (8th Cir. 1967). It would serve little purpose to require fair procedures but to permit arbitrary results. The procedures are not ends in themselves, but are a means to insure that decisions imposing substantial penalties will be based on the knowledge that grounds for the imposition of the penalties exist. The courts, therefore, have a limited right to review the merits of decisions imposing substantial penalties. In each case, the sole concern of the court must be whether the decision of the prison authorities is arbitrary and capricious. It must not substitute its judgment for that of the prison authorities.[3]

■ We believe that the District Court correctly applied the above standard when it held that prison authorities violated the rights of inmates by subjecting them to substantial penalties for relatively minor offenses. Not only was such a revocation contrary to Neb.R.R. S.1943, § 83–185 (1971), but also it was arbitrary and capricious.

It is necessary to digress at this point, to discuss the effect of Preiser, Commissioner of Correctional Services, et al. v. Rodriguez et al., 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973),[4] on the disposition of this case. In that case, several prisoners, without exhausting state remedies, brought civil rights actions under 42 U.S.C. § 1983 in federal court, arguing that they had been unconstitutionally deprived of good time; *they sought restoration of that good time.* The Supreme Court held that the relief requested could not be granted in a § 1983 action. The Court stated:

"* * * [W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the

2. Compare, Landman v. Royster, 333 F. Supp. 621 (E.D.Va.1971); Sostre v. Rockefeller, 312 F.Supp. 863 (S.D.N.Y. 1970), rev'd in part, modified in part, aff'd in part, sub nom., Sostre v. McGinnis, 442 F.2d 178, 198 (2nd Cir. 1971), cert. denied sub nom., Sostre v. Oswald, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972). See also, The President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Corrections, 86 (1967); Turner, Establishing the Rule of Law in Prisons: A Manual for Prisoners Rights Litigation, 23 Stan.L.Rev. 473, 496–499 (1971).

3. See, Marnin v. Pinto, 463 F.2d 583 (3rd Cir. 1972); Sostre v. McGinnis, *supra* 442 F.2d at 198–199; United States ex rel. Campbell v. Pate, 401 F.2d 55, 57 (7th Cir. 1968); Holland v. Oliver, 350 F.

Supp. 485 (E.D.Va.1972); Ferrell v. Huffman, 350 F.Supp. 164 (E.D.Va.1972). *Cf.,* Thompson v. Louisville, 362 U.S. 199, 206, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960); Schware v. Board of Bar Examiners, 353 U.S. 232, 239, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); Burns v. United States, 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266 (1932); United States ex rel. Vajtauer v. Comr. of Immigration, 273 U.S. 103, 106, 47 S.Ct. 302, 71 L.Ed. 560 (1927); Fisher v. Snyder et al., 476 F.2d 375 (8th Cir., 1973).

4. The parties have, at our request, submitted statements setting forth their views on the effect of Preiser, Commissioner of Correctional Services, et al. v. Rodriguez, et al., 411 U.S. 475, 93 S.Ct. 1827, 36 L. Ed.2d 439 (1973), on this case.

relief he seeks is a determination that he is entitled to immediate or more speedy release from that imprisonment, his sole federal remedy is a writ of habeas corpus. * * * [Moreover, state remedies must be exhausted before coming into federal court if such relief is sought.]"

*Id.* at 500, 93 S.Ct. at 1841.[5]
The Court noted, however, that an inmate retains the right to litigate claims relating to the conditions of his confinement under a § 1983 action in federal court without exhausting state remedies.

■ It follows from *Preiser* that it would be improper for the District Court on remand to restore good time which may have been taken from inmates in proceedings that did not meet the requirements of procedural or substantive due process. A federal court can restore good time only if state remedies have been exhausted.[6]

■ On the other hand, it will be appropriate for the District Court to establish minimum procedural due process requirements for disciplinary hearings which may result in serious penalties other than loss of good time, such as incarceration in a dry cell or solitary confinement.

■ It will also be appropriate for the District Court to order expunged from prison records, determinations of misconduct arrived at in hearings that fail to comport with minimum due process requirements.[7] See, Neb.R.R.S. 1943, § 83–185 (1971); McDonnell v. Wolff, *supra* 342 F.Supp. at 640.

We recognize that the above result may mean that the federal courts may often establish minimum due process standards for all types of disciplinary hearings for serious misconduct in state prisons and that there may be simultaneous litigation in state and federal courts, but the Supreme Court anticipated these results would probably occur. Preiser, Commissioner of Correctional Services, et al. v. Rodriguez et al., *supra* 411 U.S. at 499, n. 14, 93 S.Ct. 1841.

■ To summarize, the District Court must, on remand, determine what procedures are necessary to meet minimum procedural due process standards and whether they are being met. If the defendant is not meeting these standards, the court may grant such declaratory and injunctive relief as it deems necessary, except that it may not restore good time.

■ We turn next to the questions of whether the Complex's regulations relating to inmate legal assistance and mail censorship are unconstitutional and should be enjoined. These questions clearly relate to conditions of confinement, and thus relief may be granted under § 1983.

## II. Inmate Legal Assistance

The court upheld as reasonable a regulation adopted by the Complex which regulates inmate legal assistance and struck down restrictions which limited inmate use of the law library to seven hours per week.

5. We express no opinion as to whether Nebraska remedies are adequate. We leave this issue to be determined by the District Court on remand. See, United States of America ex rel. Luther Miller, etc., et al. v. John J. Twomey, Warden, and Peter B. Bensinger, Director, etc., et al., 479 F.2d 701 (7th Cir. 1973).

6. This means that the District Court must rescind its order requiring prison authorities to restore "blood time" taken from prisoners.

7. Courts have recognized the damaging nature of such a record entry.

" * * * [It] may follow him throughout the prison system; if his punishment was without cause, he is punished anew each time his record is used against him. * * * Similarly, his disciplinary record may affect his eligibility for parole. * * * "
Hudson v. Hardy, 137 U.S.App.D.C. 366, 424 F.2d 854, 856 (1970) (Citations and footnote omitted.). See, Black v. Warden, U. S. Penitentiary, 467 F.2d 202, 204 (10th Cir. 1972).

The plaintiff contends that the court erred in upholding the following rule:

*"Legal Work*

"A legal advisor has been appointed by the Warden for the benefit of those offenders who are in need of legal assistance. This individual is an offender who has general knowledge of the law procedure. He is not an attorney and can not represent you as such.

"No other offender than the legal advisor is permitted to assist you in the preparation of legal documents unless with the specific written permission of the Warden."

McDonnell v. Wolff, *supra* 342 F.Supp. at 631.

He argues that this rule unlawfully restricts the inmate's right of equal access to the courts in violation of the Supreme Court's decision in Johnson v. Avery, 393 U.S. 483, 490, 89 S.Ct. 747, 751, 21 L.Ed.2d 718 (1969), in which the Court stated:

" * * * But unless and until the State provides some reasonable alternative to assist inmates in the preparation of petitions for post-conviction relief, it may not validly enforce a regulation * * * barring inmates from furnishing such assistance to other prisoners." (Footnote omitted.)

See also, Gilmore v. Lynch, 319 F.Supp. 105 (W.D.Cal.1970) (three judge court), aff'd per curiam sub nom., Younger v. Gilmore, 404 U.S. 15, 92 S.Ct. 250, 30 L. Ed.2d 142 (1971).

The District Court in this case held:

"The Court should first examine the inmate assistance program whereby the Complex provides for the use of the inmate legal assistant. This procedure must satisfy the test of Johnson v. Avery, * * *. Here, the Complex allows for inmates to assist each other upon permission of the Warden. Assuming such permission is freely given, then it is certainly arguable that no Johnson v. Avery, *supra*, problem is presented, since the procedure and the alternative both are allowed. But at least it should seem evident, and the Court so finds, that such a regulation in conjunction with the comprehensive program of inmate legal assistance afforded by the Complex satisfies the reasonable alternative requirements of Johnson v. Avery, *supra*. * * * *"

McDonnell v. Wolff, *supra* 342 F.Supp. at 621.

■ The record, however, does not support the court's assumption that permission for inmates to assist each other is freely given. Rather, documentary evidence shows that permission has been apparently denied solely because of the existence of the inmate legal advisor. Thus, the inmate legal advisor program must be evaluated on its own to determine whether it is a reasonable alternative under Johnson v. Avery, *supra*. We do not think we can answer that question on this record; and for that reason, the decision of the trial court must be reversed and remanded with regard to this issue. The burden is on the defendants to demonstrate that they are providing a reasonable alternative. Johnson v. Avery, *supra* 393 U.S. at 489, 89 S.Ct. 747; Novak v. Beto, 453 F.2d 661, 663–664 (5th Cir. 1971), cert. denied, 409 U.S. 968, 93 S.Ct. 279, 34 L.Ed.2d 233 (1972). In meeting this burden, the defendants must produce evidence establishing in specific terms *what the need is for legal assistance,* and must show that the state is reasonably meeting that need. This the defendants have not done. Furthermore, in determining the need for legal assistance, the defendants must take into account the need for assistance in civil rights actions as well as habeas corpus suits. See, Nolan v. Scafati, 430 F.2d 548, 551 (1st Cir. 1970). See also, Andrade v. Hauck, 452 F.2d 1071 (5th Cir. 1971).

We note that on oral argument the attorneys for the parties indicated that the inmate legal assistance program at the Complex has been changed and now includes the assistance of law students.

We leave it to the trial court to determine whether this program meets the standards outlined above.

The defendants, in their cross-appeal, argue that the court erred in holding unreasonable restrictions which limited inmate use of the legal library to seven hours a week. The defendants rely on Johnson v. Avery, *supra* 393 U.S. at 490, 89 S.Ct. at 751, in which the Court stated:

 " * * * [T]he State may impose reasonable restrictions and restraints upon the acknowledged propensity of prisoners to abuse both the giving and the seeking of assistance in the preparation of applications for relief: for example, by limitations on the time and location of such activities and the imposition of punishment for the giving or receipt of consideration in connection with such activities. Cf. Hatfield v. Bailleaux, 290 F.2d 632 (CA 9th Cir. 1961) (sustaining as reasonable regulations on the time and location of prisoner work on their own petitions). * * * "

In this case, however, unlike in Hatfield v. Bailleaux, *supra,* no justification has been given for limiting the use of the prison library. In *Hatfield*, restrictions were justified because of limited library facilities. In the present case, the District Court found that there is "no evidence that Reformatory unit legal library is not adequate for the needs of the inmates." McDonnell v. Wolff, *supra* 342 F.Supp. at 622. Thus, we cannot say that the restrictions on the defendants' right of access to the courts are "justified by the considerations underlying our penal system," Moore v. Ciccone, 459 F.2d 574, 576 (8th Cir. 1972), and we affirm the District Court in this regard.

### III.  Mail Regulations

The evidence shows that no mail from or to courts or counsel is stopped, but all is opened. McDonnell v. Wolff, *supra* 342 F.Supp. at 623. The Complex's regulations provide that "all incoming and outgoing mail will be read and inspected." *Id.* at 635.

The District Court found that these practices and regulations unjustifiably abridged the right of inmates to have access to the courts, and ordered:

 " * * * that, regarding censorship of mail between inmates and their attorneys or the Courts, outgoing mail may not be inspected or opened; incoming mail may be opened only if manipulation of the envelope, use of fluoroscopes and metal detectors or other alternate means to opening the envelopes fail to disclose contraband and there is a real possibility that contraband will be included in such mail; in addition, if the envelope from the attorney or Court is marked 'Privileged', it cannot be opened except in the presence of the inmate addressee * * * ".

In the present case, the District Court undertook, by taking evidence and making findings, the task of determining the precise manner in which mail is hindered at the Complex, the extent to which this impedes the appellant's asserted rights and the justification offered by the defendants in support of their procedures. Compare, Moore v. Ciccone, *supra* 459 F.2d at 576.

Its order follows the guidelines suggested in Moore v. Ciccone, *supra* at 577 (Lay, Heaney, Bright and Ross, JJ, concurring) and is, we think, a proper one. As we indicate in *Moore,* a regulation of the right of inmates to correspond with attorneys is proper "only to the extent 'justified by the considerations underlying our penal system'." *Id.* at 576. The justification for this regulation asserted on appeal is that:

 "Insofar as incoming mail is involved, opening it is the only way such things as drug impregnated stationery, paper money or other type material may be discovered. Obviously, the fact that the envelope has an attorney's name printed on it is no guarantee that it is

not fictitious or being used by unauthorized or unscrupulous persons, or even persons under duress."

No justification is given on appeal for restrictions on outgoing mail to attorneys, and it appears that this part of the District Court's order is not disputed. The cases cited and discussed in Moore v. Ciccone, *supra* at 578 & n. 1, sufficiently meet the objections raised by the defendants to the District Court's order.

■ Practical methods exist for insuring that incoming mail is actually from an attorney. See, Marsh v. Moore, 325 F.Supp. 392, 395 (D.Mass.1971); Gierasch, Judicial Recognition of Prisoners' Constitutional Rights to Send and Receive Mail, 76 Dickinson L.Rev. 775, 787–788 (1972). If there is doubt, a simple telephone call should be enough to settle the matter; and the danger that a letter from an attorney, an officer of the court, will contain contraband is ordinarily too remote and too speculative to justify the defendants' regulation permitting the opening and inspection of all legal mail. And the court's order does provide, as we suggested in *Moore*, legitimate means for detecting weapons or escape materials including, in the appropriate circumstances, opening a letter in the presence of the inmate.

■ We recognize that some courts, see *e.g.*, Sostre v. McGinnis, 442 F.2d 178, 201 (2nd Cir. 1971), cert. denied sub. nom., Sostre v. Oswald, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972), have held that prison authorities have the right to open and read incoming mail from attorneys. We think such decisions unduly limit an inmate's rights without sufficient justification. Prison authorities must show that the regulation of an inmate's right to send and receive mail furthers a substantial interest, and that the incidental restrictions placed on an inmate's rights are no greater than essential to further that interest. *Cf.*, United States v. O'Brien,

391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); Nolan v. Fitzpatrick, 451 F.2d 545, 548 (1st Cir. 1971); Note, Prison Mail Censorship and the First Amendment, 81 Yale L.Rev. 87, 94–104 (1971). The District Court's order comports with these principles, and we affirm it in this respect.

The plaintiff argues that the District Court should also have enjoined censorship of mail between inmates and parties other than attorneys and the courts. The District Court held that it was unnecessary to decide this issue at the present time because the plaintiff's attack was directed at censorship between counsel and inmate. We have reviewed the record and conclude that the court was correct in this regard.

Affirmed in part; reversed in part; and remanded for action consistent with this opinion.

## ON PETITION FOR REHEARING

### PER CURIAM.

The petition for rehearing or rehearing en banc is denied.

Our opinion of August 2, 1973, does not require the state to provide or permit legal counsel to every state prisoner involved in a prison disciplinary hearing which may result in a serious penalty. Rather, we follow Gagnon, Warden v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), in holding that counsel is required only in those cases where fundamental fairness cannot be achieved absent counsel.

Prison authorities are to be given an opportunity, on remand, to state whether they will provide or permit counsel in those cases which must be reheard for lack of procedural or substantive due process pursuant to this opinion. They will also be afforded an opportunity to give reasons for their decision in each case. Thereafter, the District Court may, on request, reexamine the state's decision in the light of *Scarpelli*.