Robert E. BURNS, Plaintiff,

v.

H. R. SWENSON, Warden, and Fred T. Wilkinson, Director, Missouri Department of Corrections, Defendants.

Nos. 1072, 1113.

United States District Court
W. D. Missouri,
Central Division.

June 16, 1969.

Alex Bartlett, Jefferson City, Mo., for plaintiff.

John C. Danforth, Atty. Gen., Gene E. Voigts, Asst. Atty. Gen., State of Mo., Jefferson City, Mo., for defendants.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

### I.

This is the last case in the group of consolidated Section 1983, Title 42, United States Code, cases earlier reported as Burns v. Swenson, W.D.Mo.1968, 288 F.Supp. 4, in which we granted defendants' motion for summary judgment in part and directed further proceedings.[1] All cases involving plaintiffs other than plaintiff Burns have been dismissed or otherwise disposed of. Plaintiff Burns (together with plaintiff Owens), pursuant to orders entered July 16, August 23, and September 3, 1968, tendered for filing additional and amended pleadings. Those pleadings were the subject of a lengthy pretrial conference at which it was determined that an additional evidentiary hearing was necessary.

It was agreed at that pretrial that after the additional evidence was received, counsel would present what each deemed to be appropriate suggested findings, conclusions, and a requested form of final judgment. Plaintiff's counsel advised that plaintiff Burns' prayer for minimal damages ($19.00) had been included in his amended pleadings for the sole purpose of avoiding any possible question of mootness. The amount prayed for was intentionally set below that which would require a trial by jury in order that all equitable and legal claims could be disposed of in a final judgment to be entered after the final evidentiary hearing was held.

Final evidentiary hearing was held March 24, 1969. Counsel have submitted their respective suggestions which we have considered. We grant plaintiff Burns specific equitable relief and refuse to make other findings and con-

[1]. See also Cupp v. Swenson, W.D.Mo.1968, 288 F.Supp. 1, involving sixteen other related cases, and Griffin v. Turner, W.D. Mo.1968, 288 F.Supp. 12, involving four more related cases.

clusions suggested by both the plaintiff and defendants for reasons we shall state in detail.

We shall later indicate why particular portions of our earlier opinion reported in 288 F.Supp. 4 should and will be modified.

We believe it obvious that defendants may not be held liable for the actions of others responsible for plaintiff Burns' initial assignment to the Maximum Security Unit on June 12, 1964. We decided that much of plaintiff Burns' case when we ruled defendants' motion for summary judgment on July 16, 1968. Orders entered subsequent to our grant of partial relief on summary judgment on July 16, 1968, however, made clear that plaintiff Burns' other legal and equitable claims were not foreclosed by that interlocutory order. The order of July 16, 1968 was specifically amended to permit plaintiffs to include any claim for equitable relief that they may believe has not yet been afforded them. See the order of August 3, 1968. The still later order entered September 3, 1968 following pretrial conference also made appropriate provisions for inclusion of any additional claim for legal and equitable relief.

It is therefore apparent that we cannot accept defendants' requested finding and conclusion that all of plaintiff Burns' claims were passed on in our interlocutory order of July 16, 1968. In accordance with the orders above mentioned, we shall therefore rule the particular claims made by plaintiff Burns which have been clearly presented and litigated. See Rule 15 of the Rules of Civil Procedure.

## II.

Plaintiff Burns' suggestions requesting findings, conclusions, and for an appropriate final judgment must be viewed in light of two decisions of our Court of Appeals handed down since our original opinion in this case. Those cases are Jackson v. Bishop, 8 Cir.1968, 404 F.2d 571, involving the Arkansas Penitentiary, and Sharp v. Sigler, 8 Cir.1969, 408 F.2d 966, involving the Nebraska Penitentiary.

At the time we wrote our earlier opinion, Lee v. Tahash, 8 Cir.1965, 352 F.2d 970, was the only case involving the administration of a state prison which had been decided by our controlling Court of Appeals.[2] That case dealt solely with the exceedingly broad claim of a prisoner who "insisted that, 'prison rules notwithstanding', he had a right to send communications to any public officials throughout the United States that he desired" (352 F.2d 973).

That broad claim was rejected. Judge Johnsen, however, pointed out that the Court of Appeals was not approving a total right of censorship of all prisoners' correspondence. He noted that "where the refusal to allow mailing of some particular letter or letters has effect on some absolute right which the law secures to a prisoner despite his penal status * * * restrictions on correspondence can be unlawful" (Ibid at 972). Judge Johnsen stated only as one example that such "restrictions will not be allowed to operate to deny a prisoner access to the federal courts for presentation of alleged legal wrongs." (Ibid at 972)

Sharp v. Sigler, *supra*, made clear that what the Court of Appeals said in

---

2. Douglas v. Sigler, 8 Cir. 1967, 386 F.2d 684, was decided before we handed down our earlier opinion. That case, however, did not involve any question of prison administration. It involved the validity of the Nebraska loss of diminution of sentence statute. Nevertheless, Judge Gibson stated the following caveat in that case which we have emphasized: "The matter of the internal management of prisons or correctional institutions is vested in and rests with the heads of those institutions operating under statutory authority, and their acts and administration of prison discipline and overall operation of the institution are not subject to court supervision or control, absent most unusual circumstances *or absent a violation of a constitutional right*." [Emphasis ours].

Jackson v. Bishop was not to be considered as being solely applicable to Eighth Amendment cases and that the principles and standards articulated in the latter case were applicable to all cases involving alleged violations of federally protected constitutional rights. Sharp v. Sigler reiterated and summarized the well established principles set forth on pages 576–577 of Jackson v. Bishop and applied those principles in a First Amendment case.

█ It is undisputed that plaintiff Burns was not allowed to send his letter of April 21, 1966 to the American Civil Liberties Union seeking legal assistance in prosecuting this action. To deny a prisoner the right to correspond with a responsible organization which might afford him legal assistance is so closely associated with a denial of access to a court that blanket restrictions on such correspondence must be held to be unlawful. We so hold.

### III.

Plaintiff Burns places particular stress upon the statute, Section 216.455, under which defendants have allegedly established what is known as "O" Hall and what is known as the Maximum Security Unit. Under the agreed procedures adopted for the final decision of this case, all questions concerning "O" Hall are beyond the scope of this case.

Plaintiff Burns claims that his confinement in the Maximum Security Unit was made without any determination by the warden; that he was not determined by any appropriate procedure to be "habitually or hopelessly incorrigible;" that even if the warden had in fact informally determined that he was in fact "habitually or hopelessly incorrigible" at the time of his initial assignment, he was held beyond the time he "had been reduced to submission and obedience;" and that the possibility of a future assignment under similar circumstances is so imminent that use of the Maximum Security Unit should be enjoined until appropriate rules and regulations are promulgated for its use.

The undisputed facts in this case establish that plaintiff Burns was placed in the Maximum Security Unit on June 12, 1964, without any formal action by the warden or by anyone else. He was held there until released during the course of this litigation. The fact, however, that plaintiff Burns was returned to the general population of the penitentiary means that he needs no order of this Court to obtain a release from the Maximum Security Unit.

██ We recognize, of course, that plaintiff Burns' claims in this case are based upon Section 1983, Title 42, United States Code, and that he did not seek to invoke federal habeas corpus jurisdiction. Compare Winford v. Wilkinson (Swenson), W.D.Mo.1968, 288 F.Supp. 916 at 917. But that circumstance does not command that a court of equity exercise power and jurisdiction to correct a wrong which has already been voluntarily corrected by the defendants. Equity does not act to remedy past wrongs.

█ Plaintiff, however, contends that equity has power and that it should, under the circumstances of this case, exercise discretion to design a decree which would enjoin an apparently continuing pattern of conduct which might in the future affect plaintiff Burns' federally protected constitutional rights.

We do not agree that the circumstances require that such a broad decree be entered to protect plaintiff Burns' federal constitutional rights. We are, however, convinced that portions of our earlier opinion must be modified.

### IV.

In our earlier opinion we noted with particularity that "during the course of this litigation, the Department of Corrections promulgated and put in effect a completely revised set of rules and regulations regulating inmate conduct at the Missouri State Penitentiary." (288 F.Supp. at 7). We made a general finding that "those revised rules and regulations are, in our judgment, fair and well above any presently legally defined

threshold of administrative due process." In regard to specific rules relating to religious practice, correspondence privileges, prisoner access to the courts, and to medical treatment of prisoners, we stated that "we specifically find those particular regulations to be fair and that, if fairly administered, are calculated to reasonably protect the broadest construction that could be placed on the federally protected constitutional rights of inmates" (Ibid, p. 8). We required plaintiff in this case and the plaintiffs involved in the related case of Cupp v. Swenson, *supra*, to present their claims of violation of federally protected constitutional rights "through the Grievance Procedures established by the new rules and regulations of the Department of Corrections before such complaints are presented to this Court" before filing actions in the federal court (Ibid, p. 11).

Further reflection and commendable recognition on the part of Director Wilkinson that amendments and changes of substance are in any event needed in the new rules and regulations require that we substantially modify what we said in our earlier opinion.

The Grievance Procedures discussed in our earlier opinion contemplated the establishment of a system of internal administrative safeguards which, if appropriately administered, would establish and provide an available, adequate and effective institutional process which would include proper hearing procedures and review of lower level administrative decisions by persons removed from the immediate situation.

The factual situation presented in plaintiff Burns' case, however, does not require that we consider the Grievance Procedures contained in the new rules. Plaintiff Burns does not claim that he was deprived of federally protected rights by reason of the manner in which the Grievance Procedures were applied to him. Indeed, his claims arose long before those procedures were in existence. It is therefore not appropriate that any view be expressed in his case in regard to the Grievance Procedures contained in the new rules.

■ We have consistently refused to attempt to state in broad terms all federally protected constitutional rights retained by all prisoners in the Missouri Penitentiary. We are now convinced that we should have likewise refused to do any more than determine the claims of the particular plaintiffs in the earlier cases which pended before this Court. We recognize that a court of equity has broad and flexible power, particularly in a case involving the public interest, to frame a decree to meet the necessities of a particular case.

But we also recognize that the law has yet to fully define limits and standards in many areas of the law applicable to this and similar cases. Appropriate considerations of discretion suggest that definitive adjudication be made on a case by case basis of the particular questions which may be presented.

We therefore expressly modify and withdraw those portions of our earlier opinion which went beyond the necessities of decision of the motion for summary judgment. We refer particularly to those portions which indicated our approval of the new rules and regulations and which indicated the imposition of a condition of exhaustion of the Grievance Procedures contained therein.

### V.

Plaintiff Burns' suggested form of final judgment appropriately states his claims for specific relief. The first four paragraphs requesting specific relief relate to conditions which he suggests should be imposed in regard to his possible reassignment to the Maximum Security Unit. We cannot assume either that plaintiff Burns will conduct himself in a manner which would warrant reassignment or that, should he do so, his reassignment would not be in compliance with applicable law.

■ So far as this case is concerned, there is no occasion for this Court to pass on the validity or invalidity of any

rule or regulation in regard to plaintiff Burns' particular federal claims. The relief requested in plaintiff's first four paragraphs will therefore be denied.

■ Paragraph 5 of plaintiff Burns' requested order suggests that defendants be directed to make appropriate entries in the penitentiary records to indicate that the holding of plaintiff Burns in Maximum Security from 1964 to 1967 was legally improper and that such entries be made in a manner particularly to so advise the State Board of Probation and Parole. Such relief should and will be granted if such action has not already been taken.

■ Paragraph 6 of plaintiff's requested order suggests that defendants be ordered to distribute the Personnel Informational Pamphlet to all inmates. Such relief should not be granted for reasons implicit in what we have stated above. While state law may require distribution of the rules, we do not understand that such distribution is commanded under the Constitution or laws of the United States under the circumstances of this case.

■ Paragraphs 7 to 14 of plaintiff's requested order suggests that this Court order defendants to promulgate and put into effect substantive rules of conduct applicable to inmates at the Missouri State Penitentiary, and that defendants be ordered to promulgate guidelines, procedures, systems of investigation, and the like, in regard to particular phases of the management and government of the penitentiary. We have stated the reasons why this Court should not attempt to write, or even indicate approval of, the rules and regulations for the Missouri Department of Corrections. We have no reason to assume that defendants will not comply with all applicable laws. Indeed, we have every

confidence that precise attention will be focused upon all applicable Missouri and federal law when the revision of the rules and regulations indicated by Mr. Wilkinson is undertaken.

Nothing we have stated in this opinion is to be taken in any way as any retraction of the commendation of Director Wilkinson and other officials of the Missouri Department of Corrections made in our earlier opinion. We made clear that we considered the initial promulgation of rules and regulations for the Missouri penitentiary was a major step taken by an enlightened correctional administration.

Paragraph 15 of plaintiff's requested order suggests that defendants be enjoined from refusing to allow plaintiff to correspond with the American Civil Liberties Union or to impede his access to the Courts of the United States or the State of Missouri. In light of Mr. Wilkinson's statement of no objection to such correspondence and in light of considerations similar to those enunciated by Chief Judge Becker in Peek v. Ciccone, W.D.Mo.1968, 288 F.Supp. 329, an appropriate order should be entered permitting correspondence with the American Civil Liberties Union.

■ The final order need not include any provision concerning access to the state or federal courts. There is no evidence that plaintiff Burns has been denied access to either court system or that any retaliatory action has ever been taken against him in regard to his litigation in this Court.[3]

Alex Bartlett, Esq., of Jefferson City has continued to represent plaintiff Burns. We commended Mr. Bartlett highly in our earlier opinion. See 288 F.Supp. at 7. We again state that his uncompensated services are in the highest tradition of the Bar. The Court is grateful to him and to his law firm,

3. Recent correspondence between counsel indicates that administrative action is contemplated in regard to plaintiff Burns, under which he will, as were all of the other plaintiffs in these consolidated cases, be awarded five days per month merit time retroactively to his initial assignment to the Maximum Security Unit in 1964. Such action demonstrates defendants' consistent attitude of non-retaliation toward plaintiff Burns.

Hendren and Andrae, who obviously bear part of the burden of his efforts.

For the reasons stated, it is

Ordered that our earlier opinion, reported in 288 F.Supp. 4, should be and the same is hereby modified to the extent stated in this opinion. It is further

Ordered that appropriate entries be made in the penitentiary records to indicate that the holding of plaintiff Burns in Maximum Security from 1964 to 1967 was legally improper and that such entries be made in a manner particularly to so advise the State Board of Probation and Parole. It is further

Ordered that plaintiff Burns be permitted to correspond with the American Civil Liberties Union concerning this or any other case he may file in this or any other court.