John Brenton PRESTON, Plaintiff,

v.

Henry E. COWAN, Superintendent Kentucky State Penitentiary, et al., Defendants.

Civ. A. No. 2381.

United States District Court, W. D. Kentucky, Paducah Division.

Sept. 21, 1973.

John Brenton Preston, pro se.

Robert A. Sedler, Lexington, Ky., for plaintiff.

Ed. W. Hancock, Atty. Gen. of Ky., Frankfort, Ky., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW

## OPINION

ALLEN, District Judge.

The plaintiff, John Brenton Preston, presently an inmate at the Arizona State Penitentiary, formerly an inmate of the Kentucky State Penitentiary at Eddyville, Kentucky, filed his complaint under 42 U.S.C. §§ 1983 and 1985, setting up twenty alleged violations of his civil rights, and asking for injunctive relief and damages. Prior to trial, he filed a motion for a class action order as to certain of the injunctive relief requested. This motion was not formerly brought to the attention of the Court until the trial and, therefore, remains to be ruled upon.

After the filing of various pleadings by the defendants, the Court sustained summary judgment or motion to dismiss as to eight of the twenty counts of the complaint. A trial was then had, as to the remaining twelve counts, lasting two days. While evidence was introduced as to each of the counts at the trial, counsel for plaintiff now concedes that his claim for damages is ill-founded except with respect to the following items:

1. Refusal to mail a letter addressed by the inmate plaintiff to his attorney of record.

2. Motions for writs of habeas corpus addressed to the United States Supreme Court.

3. Mail addressed by the plaintiff inmate seeking to employ Raymond Schultz, Esquire, as attorney in a lawsuit to be filed.

4. Letters addressed by plaintiff to former Governor Louie Nunn, of the State of Kentucky, and the deceased Director of the Federal Bureau of Investigation, J. Edgar Hoover.

5. The placing of the plaintiff in administrative segregation on January 9, 1973.

In addition, plaintiff contends, on behalf of all inmates at Eddyville and LaGrange Penitentiaries in Kentucky, that the present mail censorship regulations in effect are unconstitutional and invalid and should be revised to meet constitutional standards. This contention includes a claim that the prison authorities acted wrongfully in opening a letter addressed to him by Mr. Rivkin, co-counsel for plaintiff in this action. Also, plaintiff contends on his own behalf that his transfer to Arizona without any prior notice or hearing fails to meet constitutional standards.

In view of these claims of censorship for counsel by plaintiff, the Court will address itself first to the demand for damages he contends are still available to him and to the claim made on behalf of the class of inmates who are affected by the censorship mail regulations of the Kentucky Department of Corrections.

Coming now to the specific allegations made by the plaintiff with respect to his mailing privileges, the first concerns a letter written by the plaintiff to Robert Sedler, Esquire, his attorney of record in a case then pending in the Eastern District of Kentucky, and his present attorney of record in this action. The letter in question was written on January 9, 1973, and it was unsealed. The letter contained the following paragraph:

"With a view in mind toward discussing with you the advisability of initiating further litigation for constitutional deprivations, I would request that you accord me a visit if you visit this area. There are other business matters I would discuss with you were censorship not so stringent. I would prefer, then, to talk with you in person."

The preceding paragraph of the letter referred to the federal case then pending in Pikeville, Kentucky.

This letter was brought to the attention of the Warden at Eddyville, defendant Henry Cowan, and he called the plaintiff into his office for a discussion concerning it. Cowan complained about Preston seeking to have special attention in regards to mail matters, and took the view that Preston was unduly harassing

him and other members of the prison staff by asking that his mail be censored by the Warden. Following the conference, an Incident Report was filed by B. Hardy, an officer at Eddyville, against the plaintiff. The report charged the plaintiff with "[u]tilizing the mails to intimidate and threaten the Superintendent of this institution, and seeking through harrassment (sic), thereby imposing undue hardship, to force the Superintendent to make him a special revolutiary (sic) case rather than follow the regulations which control and govern the other inmates of this institution." This report was filed January 8, 1973, and Preston waived the right to have someone present at the hearing to represent him, and on January 9th, the hearing was held before a three-man Adjustment Committee, consisting of defendants Reynolds, Epperson and Captain Johnson.

The Committee found the plaintiff was guilty of writing the letter and returned the letter to him. It was then found that he was guilty, and recommended that he be placed in administrative segregation for proper control. Plaintiff was then placed in administrative segregation on the 9th of January, 1973, and transferred to Arizona on the 10th of January.

At the time that the letter to Mr. Sedler was written, the Kentucky State Penitentiary was still operating under the provisions of a memorandum dated October 15, 1971, providing that letters addressed to attorneys and court officials should be taken to the caseworker to be mailed. No letters of this sort were to be returned to the inmate without the approval of the Assistant Warden of Treatment. However, the only uncensored mail was correspondence addressed to the Governor of Kentucky or the Commissioner of Corrections.

On October 26, 1972, the Department of Corrections revised its directives concerning mailing privileges and provided that an inmate's letter to employed or appointed counsel was to be considered as privileged correspondence and was to be sealed by the inmate before being forwarded to the Mail Room. However, this regulation was not in force on January 9, 1973, but was put into effect on February 26th, of that year.

Defendant Cowan, in defense of his action as to the refusal to mail this letter to Mr. Sedler, took the viewpoint that it was intimidating and harassing, and should not be sent out. The Court is unable to agree with the defendant's characterization of this letter, and under the holding of the Supreme Court in the case of Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), and cases such as Palmigiano v. Travisono, 317 F.Supp. 776 (D.C.R.I.1970), the refusal to mail the letter was unauthorized and amounted to a denial of the Sixth Amendment rights of the plaintiff. In light of the fact that Johnson v. Avery, supra, had been tried three years prior to the attempted mailing of the letter to Mr. Sedler, and in view of such decisions as Burns v. Swenson, 300 F.Supp. 759 (D.C.W.D.Mo.1969), modified 430 F.2d 771 (8th Cir. 1970); Sostre v. McGinnis, 442 F.2d 178 (2nd Cir. 1971), cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740; Palmigiano v. Travisono, supra, defendant Cowan did not meet the burden of proving that his belief that his conduct was constitutionally permissible was a reasonable belief, given the state of the law at the time that his decision was made, to prohibit the sending of the letter. See Pierson v. Ray, 386 U.S. 547, 555–558, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) and Landman v. Royster, 354 F.Supp. 1302 (D.C. E.D.Va.1973).

The Court, therefore, holds that the plaintiff is entitled to nominal damages in the amount of $25, see United States ex. rel. Motley v. Rundle, 340 F. Supp. 807 (D.C.E.D.Pa.1972). No award of compensatory damages is made in light of plaintiff's failure to prove any deprivation of liberty or monetary damages arising as a result of the failure to allow the letter to be mailed.

With respect to the mailing matters concerning writs of habeas corpus, the

plaintiff's proof tends to show that he had prepared a motion for a writ of habeas corpus and a motion under Rule 4901 to be mailed to the United States Supreme Court in 1968. The weight of the evidence is to the effect that, although the penitentiary was operating under DC–Rg–2 Regulation, which allowed inmates to send out papers constituting a part of habeas corpus or coram nobis proceedings, they refused on this occasion to allow their mailing. While none of the defendants or anyone testifying for them admitted any direct knowledge of the refusal, defendant Wingo, who was Warden of Eddyville at the time of the refusal, stated that if the papers were refused, it was because of their abusive, profane or insulting language or unnecessary statements tending to cast aspersions on the acts, character, or conduct of any public officials. This exception to the rule allowing habeas corpus papers to be filed is also found in Regulation DC–Rg–2. Defendant Wingo did not point to any particular portion of the papers addressed to the Supreme Court as being of an insulting or abusive nature, but even if he had, the refusal to mail out such papers pertaining to legal rights of the plaintiff would be in violation of the Sixth Amendment of the Constitution and of the principles laid down in Ex Parte Hull, 312 U.S. 546, 549, 61 S.Ct. 640, 642, 85 L.Ed. 1034 (1941). There the Supreme Court said:

"The regulation is invalid. The considerations that prompted its formulation are not without merit, but the state and its officers may not abridge or impair petitioner's right to apply to a federal court for a writ of habeas corpus. Whether a petition for writ of habeas corpus addressed to a federal court is properly drawn and what allegations it must contain are questions for that court alone to determine. Compare, First National Bank v. Anderson, 269 U.S. 341, 346, [46 S.Ct. 135, 137, 70 L.Ed. 295]; Erie R. Co. v. Purdy, 185 U.S. 148, 152, [22 S.Ct. 605, 606, 46 L.Ed.

847]; Carter v. Texas, 177 U.S. 442, 447, [20 S.Ct. 687, 689, 44 L.Ed. 839], see Ex parte Sharp, D.C., 33 F.Supp. 464."

Since Ex Parte Hull had been the law of the land for some 28 years before defendant Wingo blocked the mailing of the motions to the Supreme Court, it is obvious that he did not meet the burden imposed upon him by Pierson v. Ray, supra, of proving that his belief that his conduct was constitutionally permissible was a reasonable belief, given the state of the law at the time his decision was made. The Court, therefore, holds that plaintiff is entitled to nominal damages in the amount of $25 from defendant Wingo on this count. See United States ex rel. Motley v. Rundle, supra.

With regards to compensatory damages incurred as a result of the refusal of defendant Wingo to send the motions to the Supreme Court, plaintiff has failed in this respect. Plaintiff did not introduce any proof as to what the eventual disposition of the matters was which he had pending before the Supreme Court. As best it can be gathered from the evidence, plaintiff was and is contending that the transfer from LaGrange to Eddyville amounted to a constitutional violation of his rights, but he has cited no authority for that proposition, and no case has yet held that an intrastate transfer of prisoners amounts to a constitutional violation. For these reasons, plaintiff's claim for compensatory and punitive damages is denied.

The next contention of the plaintiff concerns letters he addressed on February 18 and February 20, 1969, to Raymond Schultz, Esquire, an attorney in Paducah, Kentucky. The first letter concerns an injury which plaintiff alleges he sustained at the hands of another inmate and asked Mr. Schultz for an interview at his very earliest convenience. The letter of February 20, 1969, to Mr. Schultz speaks of retaining him to represent plaintiff in an impending civil action in a federal suit, and states

that plaintiff has the necessary funds to defray Mr. Schultz's travel expenses and provide a retainer fee. The authorities refused to allow the mailing of these letters on the grounds that Mr. Schultz was not an attorney of record. Neither the present mailing regulations nor prior ones contain any specific reference to the status of correspondence between an inmate seeking legal counsel and the attorney whose assistance he seeks. At the time that defendant Wingo refused the mailing of the letters to Attorney Schultz, he was apparently relying on the holding by the Sixth Circuit in Kirby v. Thomas, 336 F.2d 462 (1964), which validated a regulation of the Department of Corrections which prohibited the inmates from attempting to file civil suits for damages in circuit courts, and relied on Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948) and Kelly v. Dowd, 140 F.2d 81 (7th Cir. 1944), whose rationale is that "it is not the function of the courts to superintend the treatment and discipline of prisoners in penitentiaries, but only to deliver from imprisonment those who are illegally confined."

Since the Kirby decision, the Supreme Court has greatly expanded the constitutional rights of inmates in penitentiaries, as is evidenced by such cases as Johnson v. Avery, supra, Younger v. Gilmore, 404 U.S. 15, 92 S.Ct. 250, 30 L. Ed.2d 142 (1971); Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); and Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972).

 The Court is convinced that the present state of the law with regards to the constitutional rights of inmates to address letters to attorneys concerning potential litigation cannot be denied them, because to do so is to deny them their Sixth Amendment rights. See Johnson v. Avery, supra; Burns v. Swenson, supra; and Sostre v. McGinnis, supra. However, the letters to Mr. Schultz were written shortly before the decision in Johnson v. Avery and at a time when the prison authorities in

Kentucky may have still been relying on the decision in Kirby v. Thomas, supra. The Court holds, therefore, that the defendants have met the burden imposed upon them in this civil rights action proving that they believed that their actions to be constitutionally permissible, and that their belief was reasonably based upon the state of the law in effect at the time their actions took place.

Plaintiff's reliance upon McCloskey v. State of Maryland, 337 F.2d 72 (4th Cir. 1964), is misplaced in this connection since the Court there merely stated in their dictum that it would be unconstitutional to deny an inmate the right to correspond with an attorney concerning violations of his constitutional rights or application for habeas corpus.

In the instant case, the first letter to Mr. Schultz does not indicate that a constitutional deprivation was suffered, but merely that a fellow inmate may have tortuously assaulted the plaintiff. The second letter is lacking in specificity and refers only to suit to be filed in federal district court, therefore, plaintiff's claim for damages in this respect is denied.

With respect to letters mailed to Governor Nunn and J. Edgar Hoover, they apparently were written on February 13, 1969 and notarized on February 20th of that year by William Lasley, a prison official. The weight of the evidence is to the effect that defendant Wingo, the Warden, defendant Roberts, who then acted in a mere censorship capacity, and defendant Cowan, who had power to recommend the censorship of mail, refused to allow these two letters to be mailed. Both letters contained allegations by plaintiff that his federal civil rights had been violated and he asked for an investigation of the matter.

 While recent decisions such as Nolan v. Fitzpatrick, 451 F.2d 545 (1st Cir. 1971) leave little doubt in the Court's mind that a prisoner has an absolute right to address his grievances to public officials by letters written from the prison, so long as it can be shown the letters have not been circulated to

other inmates in the prison, with the view in mind of inciting a riot or lesser forms of violence or resentment against the prison officials, the state of the law at the time these letters were attempted to be mailed was not clear.

■ *Nolan* was not decided until 1971 and Palmigiano v. Travisono, supra, was decided in 1970. Neither of these cases would have controlling effect in this district per se, although this Court wholeheartedly agrees with the excellent reasons and conclusions reached in both opinions and, particularly in *Nolan.*

Since, therefore, defendants met the Pierson v. Ray, supra, test as to their reasonable belief that they were not infringing upon the plaintiff's constitutional rights, plaintiff's claim for damages with respect to the letters to Governor Nunn and Director Hoover must be denied.

■ Plaintiff's claim that his confinement to administrative segregation for one day in January, 1973, which resulted because of the Adjustment Committee's decision that his letter to Mr. Sedler was intimidating, is not sustained by the authorities. It is true that the administrative decision to place plaintiff in administrative segregation was based on an erroneous belief that the letter in question would, in effect, constitute harassment and intimidation of the Warden. However, this decision was reached by a committee of three, and plaintiff was given the opportunity to present evidence at the hearing and to have someone from the prison population represent him if he so desired. There was, therefore, no Fourteenth Amendment violation, nor was there an Eighth Amendment violation, in that his confinement was for a very short period of time and in no way approached the barbarous punishment imposed in Wright v. McMann, 460 F.2d 126 (2nd Cir. 1972). This Court chooses to follow the decision in the case of Clutchette v. Procunier, 328 F.Supp. 767 (D.C.N.D. Cal.1971), and to decline plaintiff's invi-

tation to award him damages in this respect.

■ Shortly prior to the trial of this action, it was brought to the Court's attention that the plaintiff had made a motion that the action be held to be a class action as to the issues concerning the mailing regulations imposed by the defendants. When the Court inquired of counsel at the trial as to whether there was any objection to the motion, counsel for defendant replied in the negative. The Court had some doubts as to the application of the Rule to this action, inasmuch as plaintiff had filed so many individual claims asking for damages; however, as to the matter of mail regulations, it would seem that a class action order under Rule 23(b)(2), Federal Rules of Civil Procedure, is appropriate in light of the decisions in Inmates of Attica v. Rockefeller, 453 F.2d 12 (2nd Cir. 1971) and Jackson v. Bishop, 404 F.2d 571 (8th Cir. 1968).

Here, the proposed class is sufficiently numerous to make joinder impractical and all inmates have a common interest in preventing unconstitutional mail censorship. The claims of plaintiff are typical of those of the inmates and an injunction against enforcement of invalid regulations would fairly and adequately protect the interests of all inmates. See Rule 23(a), F.R.Civ.P. Furthermore, the representatives of the state have failed to act on grounds generally applicable to the class, thereby making injunctive relief appropriate with respect to the class as a whole. See Rule 23(b)(2), F.R.Civ.P.

In Inmates of Attica v. Rockefeller, supra, it was held that the district court erred in denying appellants' application to maintain the suit as a class action as to one of the issues contained in the complaint. In Palmigiano v. Travisono, supra, it was also held that a suit questioning the validity of mailing regulations imposed by prison authorities was properly maintainable as a class action.

For the foregoing reasons, that phase of the action which has to do with the

validity of the mailing regulations is held to be maintainable as a class action and an order to that effect will be incorporated in the judgment.

With regards to the question of the present mail censorship regulations imposed by the defendants dated October 26, 1972 and April 20, 1973, these regulations and the procedures thereunder are basically as follows:

First, there is a general correspondence list which includes the members of the immediate family, or approved non-members. Approvals of the non-members must be given by the defendants.

Next, there is a special correspondence designation, which provides, in effect, that special purpose letters may be written to approved persons, but special purpose shall relate only to business matters affecting the inmate or his family, matters relating to the formulation of a parole plan, or other reasons relating to the inmate's welfare. Approval for such letters is to be given by the defendants.

Next, is the privileged correspondence classification, which allows correspondence to the Governor, Commissioner, a court of competent jurisdiction, employed or appointed legal counsel, and the office of the Public Defender.

Then the regulations provide that all incoming and outgoing general or special correspondence shall be subject to inspection only. It is stated that correspondence subject to inspection only shall be for discovery of contraband and shall not be read. Incoming privileged mail is to be inspected only and outgoing privileged mail is to be sealed by the inmate and sent through the mails.

While these provisions apparently grant liberality to the inmates with respect to their mailing privileges, there is an exception to the announced intention of inspecting approved mail only, and that exception is as follows:

"If sufficient reason exists to believe that particular correspondence may constitute a threat to the safety and security of the institution or to be adverse to the welfare and best interest of the inmate, the correspondence may be read by the Superintendent or his designate. If said correspondence is found not to be harmful, it shall be forwarded to the inmate through regular channels. If the correspondence is rejected, it shall be returned to the sender with a letter from the Superintendent stating the reason therefor."

The effect of the exception and its administration by the prison authorities has resulted in giving the authorities complete censorship of all prison mail, except for mail addressed by an inmate to the Governor, Commissioner, a court of competent jurisdiction, employed or appointed legal counsel, and the office of the Public Defender.

In defense of its practice of still censoring outgoing and incoming mail, other than privileged mail, the defendants have fallen back upon the proposition that such mail may contain contraband, escape plans, or may be shocking to the recipient thereof. Defendants cited one instance when they alleged that an attorney for an inmate had attempted to mail contraband to the inmate. Defendants did not cite any case where they had learned of actual escape plans being formulated or initiated by correspondence addressed by an inmate to an outside source. Defendants did, of course, cite many instances where contraband such as narcotics have been found in incoming mail.

In the case of Moore v. Ciccone, 459 F.2d 574 (8th Cir. 1972) the concurring opinion of four Circuit Judges has this to say with regard to these contentions:

"Thus, while control of the mails may be a proper function of penal administration, overly broad regulations which permit the opening and inspection of legal mail cannot be generally approved. The search for contraband, when extended to ordinary correspondence, seems both remote and speculative."

Since Johnson v. Avery, supra, there have been a spate of cases concerning many phases of prison mail censorship.

One of the best reasoned of these cases is Nolan v. Fitzpatrick, supra, where the court invalidated a prison ban against mail to the news media. The court pointed out that a total ban is in violation of First Amendment rights still retained by prisoners. In that case, the Court stated that the ban's restrictive effect upon the First Amendment rights of prisoners and the public is greater than that which is essential to the furtherance of the First Amendment rights. The court pointed out that it could see no threat to the security interest of the prison, because of letters sent by the prisoners to the media, and stated that the most that could be said as far as security was concerned is that there might possibly be a newspaper story arising as a result of inmate letters to the press which could create a clear and present danger of violence or breach of security. The court said in that event prison officials could cope with the situation by refusing to admit the dangerous issue of the newspaper, rather than by refusing to mail the letter in the first instance.

Other cases such as Guajardo v. McAdams, 349 F.Supp. 211 (D.C.S.D.Texas 1972) have held that prisoners have a privileged right to correspondence with all government officials and their prospective counsel, as well as their employed or appointed counsel. To rule otherwise would be to deny the inmates their First Amendment rights with respect to letters to government officials and their Sixth Amendment rights with respect to employment of counsel.

■ From the foregoing it can be seen that Paragraph III entitled "Privileged Correspondence" of the regulations is too narrow in that inmates should have an absolute right to address not only persons designated therein but also to write the news media, all government officials, and any attorney for legal advice. See Guajardo v. McAdams, supra, and Palmigiano v. Travisono, supra.

Coming next to the thorny question of whether or not outgoing mail should be censored at all, there is a definite conflict in authority. *Guajardo* and *Palmigiano* specifically hold that outgoing mail should not be censored. Reasons are stated in these opinions for the holdings. A contrary result was reached in Gates v. Collier, 349 F.Supp. 881 at p. 896 (D.C.N.D.Miss.1972). This case holds that inmates are entitled to noncensorship of all outgoing mail addressed to all officials of federal, state and local courts; all federal officials, all state officials and all officials of the penitentiary staff; and the probation and parole board. In addition, it holds that other classes of outgoing mail may be screened for escape attempts or other illegal activities. See also, Sostre v. McGinnis, supra.

■ This Court agrees with the reasoning found in *Guajardo* and *Palmigiano* to the effect that outgoing mail does not constitute a threat to prison security, nor does the censoring of it lead to the rehabilitation of the prisoner nor to prison discipline. As pointed out in *Palmigiano*, inmates may have visitors, and many discuss their plans with the visitors free from censorship and overhearing by the prison guards. This is the usual practice in the United States, and defendants did not cite a contrary practice in their evidence. Any escape plans could be formulated in this manner and yet they are not censored.

■ The language of Moore v. Ciccone, cited above, and the reasoning in Nolan v. Fitzpatrick, supra, and the holdings of *Guajardo* and *Palmigiano* support the conclusion of this Court that outgoing mail should not be subject to censorship. The question then is raised as to whether or not there should be an approved list of correspondents with whom an inmate may correspond. For the reasons stated above with regards to censorship of outgoing mail, it is believed that there should be no such restriction, with the distinct understanding that the inmate will be required to supply his own postage and the expense of mailing any and all correspondence.

The cases, which have held that the number of persons with whom an inmate should correspond may be validly limited, have concerned themselves with the situation where inspection of all such correspondence would have been required by the prison authorities, and it was believed that the duties imposed upon the prison personnel would be too burdensome if inmates could correspond with any unlimited number of persons. See Guajardo v. McAdams, supra, proving restrictive with regard to incoming mail and Lee v. Tahash, 352 F.2d 970 (8th Cir. 1965).

The Court specifically finds that there is no threat to the security of the prisoners, the maintenance of discipline therein, and no rehabilitative effect on prisoners served by censorship of outgoing mail. See Carothers v. Follette, 314 F.Supp. 1014 (D.C.S.D.N.Y. 1970). The Court also observes that, by reason of the time saved in not having to inspect outgoing mail, no greater burden in terms of time and expense will be imposed upon the prison authorities by this holding in the administration of the prisons, and that the time which had formerly been spent in censoring outgoing mail may be balanced off against the extra time which may be consumed by the Court requiring the mail censors to open mail from privileged correspondents to inmates in the presence of the inmates.

With respect to incoming mail addressed by a person in the privileged class to the inmate, the chances seem extremely remote that any such person would indulge in either the sending of contraband or the formulation of an escape plan. However, to guard against even such an unlikely event, the Court holds that the prison officials may inspect such privileged incoming mail for contraband only, and only in the presence of the inmate. The prison authorities would be given the right to retain the envelope but must hand the letter to the inmate without reading it in his presence. See Smith v. Robbins, 454 F.2d 696 (1st Cir. 1972)

With respect to all other incoming mail, the defendants may inspect it for contraband and may also reject its delivery to the inmate if it contains contraband, or information for plots to escape, or discusses criminal activities, or contains plots to use overt action to overthrow lawful authorities. See Guajardo v. McAdams, supra. If an incoming letter is rejected, the inmate should be notified forthwith and told why. See Guajardo v. McAdams, supra.

With respect to the question of the interstate transfer of the plaintiff without a hearing and without prior notice, that question has been laid to rest, at least in the district court, by the decision in Ault v. Holmes, et al., Civil Action No. 2399, 369 F.Supp. 288, entered by this Court on August 20, 1973. That decision holds that such interstate transfers are constitutionally invalid, in that they do not afford prison inmates the right to due process before their transfer. While the decision has been appealed by the defendants to the United States Court of Appeals for the Sixth Circuit, this Court has denied defendants' application for a stay. The opinion and order entered in denying the application for a stay recite that the Court considers 90 days after entry of judgment to constitute a reasonable time within which the defendants may comply with the judgment and afford prison inmates who have been transferred out of state a due process hearing as to the reasons for their transfer.

In light of the decision in *Ault,* it is the holding of the Court that plaintiff is entitled to a due process hearing as to the reasons for his transfer, said hearing to be granted on or before November 20, 1973.

Finally, it should be noted that, while plaintiff has abandoned his claim for damages with respect to an alleged deprivation of medical treatment, the Court's specific attention was called by

counsel to the case of Stiltner v. Rhay, 371 F.2d 420 (9th Cir. 1967), where it was held that in order to constitute a justiciable claim by a prison inmate for alleged deprivation of medical treatment, there must be shown the following elements:

1. Acute physical condition;

2. The urgent need for medical care;

3. The failure or refusal to provide it; and

4. Tangible residual injury.

As stated by the Court from the bench at the time of trial, plaintiff failed to satisfy the requirement that a permanent residual injury was shown as a result of defendants' deliberate refusal to afford him medical treatment.

The Court has this day entered a judgment in accordance with these findings of fact and conclusions of law.

## JUDGMENT

The Court having entered its findings of fact and conclusions of law, in the above styled action,

It is hereby ordered and adjudged as follows:

1. Plaintiff, John Brenton Preston, shall have judgment against the defendant Henry E. Cowan, in the amount of $25.00 for nominal damages suffered by him as a result of the refusal of said defendant to allow plaintiff to send a letter to Robert Sedler, Esquire, dated January 8, 1973.

2. Plaintiff is awarded judgment against defendant John W. Wingo in the amount of $25.00 as a result of said defendant's refusal to allow the sending of motions and writs to the United States Supreme Court in the year 1968 by the plaintiff.

3. All other claims of the plaintiff for damages are hereby dismissed with prejudice.

4. Defendant Henry E. Cowan, his agents, employees, servants, assigns or successors, who have direct control over mail and mail censorship at the Kentucky State Penitentiary in Eddyville, Kentucky, and defendant Charles J. Holmes, his agents, employees, servants, assigns or successors, in the Department of Corrections, including all persons located at LaGrange Reformatory, having direct control over the mails, are hereby prohibited and enjoined from following any rules, regulations or practices which are inconsistent with the guidelines set forth in the findings of fact and conclusions of law in this action, and more specifically, said defendants, their agents, employees, servants, assigns or successors, are hereby permanently enjoined from censoring any outgoing mail addressed by prison inmates, and from imposing any restriction on the number of correspondents to whom such outgoing mail may be sent.

Also, said defendants, their agents, employees, servants, assigns or successors are hereby enjoined and prohibited from placing any restrictions on the number of correspondents who may send mail to inmates, and are also enjoined from opening any mail addressed by the persons whom this Court has designated as privileged correspondents to inmates, except for the purpose of detecting contraband, and from conducting said inspection except in the presence of the inmate, and are also enjoined from reading any such privileged correspondence.

It is further ordered and adjudged that defendants may inspect incoming mail for contraband, escape plots, plots to overthrow prison authorities or proposed criminal activities, and may promulgate appropriate regulations in accordance therewith.

It is further ordered and adjudged that as to mail addressed to an inmate by a person whom this Court has held to be a privileged correspondent, the defendants are enjoined from reading said mail, but are permitted to open said mail only in the presence of the inmate to whom the letter is addressed, and provided further that the defendants may retain the envelope for further inspection should they desire.

It is further ordered and adjudged that the defendants may, if they wish, make said inspection for contraband by scientific means without physically opening the envelope in which event the envelope and its contents will be delivered to the inmate after inspection.

It is further ordered and adjudged that in the event the defendants refuse to deliver any incoming mail to the prison inmates in accordance with this judgment, that it shall notify the inmate of the reasons for nondelivery.

It is further ordered and adjudged that defendants grant to the plaintiff a due process hearing in accordance with the judgment set out in the case of Ault v. Holmes, et al., Civil Action No. 2399, 369 F.Supp. 288, as to the reasons for his interstate transfer, said hearing to be held on or before November 20, 1973.

It is further ordered and adjudged that this is a final and appealable judgment and that there is no just cause for its delay.

### CLASS ACTION ORDER

The Court having considered the motion of the plaintiff for an issuance of a class action order, and being fully advised in the premises,

It is hereby ordered and adjudged that plaintiff has properly brought this action on his own behalf and pursuant to Rule 23(a), (b)(2) Federal Rules of Civil Procedure, on behalf of all adult persons presently incarcerated in institutions maintained by the Kentucky Department of Corrections. The class is so numerous as to make joinder of all members impracticable; the policies, procedures and regulations challenged by the plaintiff have been applied to all members of the class, and are applicable to all members of the class; the claims of the plaintiff are common to all members of the class; and common relief is sought.

It is further ordered and adjudged that this action is a class action only insofar as it pertains to the question of mail censorship imposed by the defendants in this action, and more particularly, as to the provisions of Directive Number 18, of the Administrative Regulations of the Kentucky Department of Corrections, effective April 20, 1973.

It is further ordered and adjudged that the defendant Charles Holmes, his agents, employees, servants, assigns or successors, at the Kentucky State Reformatory at LaGrange, Kentucky, and the defendant Henry Cowan at the Kentucky State Penitentiary, Eddyville, Kentucky, post a copy of this order upon the bulletin board or some other prominent place at each of said penitentiaries promptly upon receipt of this order.